## NEW YORK SUPERIOR COURT.

THOMAS McSPEDON and CHARLES W. BAKER agt. THE MAYOR, &c., OF THE CITY OF NEW YORK.

Where the *public printing* of the corporation of the city of New York involves the expenditure of more than $250, it should be done by contract founded on sealed bids, &c., in pursuance of the 12th section of the act of 1853 *(Sess. L.,* 1853;) and this is the law, whether the printing is required for the *legislative* or executive department.

Therefore, where the work done by the plaintiffs, and for which this action was brought, was work which should have been contracted for in the manner and with all the formalities prescribed in the 12th section of the act of 1853; and as the contract for it was not made in that manner,

*Held,* that it was *null* and *void,* and could not be enforced against the defendants.

Also *held,* that the plaintiffs could not recover for such work under a former contract made with the defendants in 1848, (for one year only) for similar work, although one board of the common council in 1854 passed a resolution recommending that the old contract be continued.

Nor could the plaintiffs recover on an *implied assumpsit,* that the defendants, having accepted the work, were bound to pay what it was reasonably worth, notwithstanding the express contract under which it was done, was null and void. The defendants can make no contract or *promise,* express or *implied,* except in the manner and with all the formalities prescribed by statute.

*New York General Term, March,* 1861.

BOSWORTH, WOODRUFF and WHITE, *Justices.*

THIS action was brought by the plaintiffs to recover from the defendants the sum of three thousand dollars, with interest from January 1st, 1855, for printing and binding, at the defendants' request, fifteen hundred copies of a book known as "The City Charter, with Kent's Notes."

The complaint sets forth, that on December 16th, 1853, in compliance with the mandate of a resolution passed that day by the defendants' common council, the clerk of said common council retained and employed the plaintiffs to print and bind fifteen hundred copies of the book known as "The City Charter, with Kent's Notes," including all the amendments to that date, for the price or compensation of two dollars for each copy. That, pursuant to such retainer and employment, the plaintiffs printed and bound fifteen hundred copies of said book, with all the amendments required, and delivered them to the defendants, who accepted them. That the defendants thereafter, on June 18, 1855, by resolution of their said common counsel, directed the comptroller of said city to pay the plaintiffs their bill of $3,000 for printing and binding said books, which bill the clerk of the common council had before then certified to be correct; but the defendants neglected and refused to pay the same.

The complaint also contains two other counts, or statements of causes of action, after the manner of the common counts, *in assumpsit,* under the old practice; one for goods sold and delivered by the plaintiffs to the defendants, at their request, of the value of $3,000; and the other for an indebtedness in the sum of $3,000 for work, labor and services done and performed, and for materials furnished, by the plaintiffs for the defendants, at their request, in and about the printing and binding of fifteen hundred copies of the book known as "The City Charter, with Kent's Notes;"

a promise to pay and a breach of said promise, and demand of judgment, being stated in each count.

The answer admits the passage of the resolutions of December 16, 1853, and June 18, 1855, but avers that these resolutions are in violation of the 12th section of the act of the legislature of the state of New York, passed April 12, 1853, amending the charter of the city of New York, and that they conferred no authority whatever upon the clerk of the common council to employ the plaintiffs to perform the work mentioned in the complaint, nor upon the comptroller to pay for it; and that the defendants are not bound by the same, nor in any manner liable to pay for the work done under them. The answer also states that if the work had been submitted to contract, pursuant to said 12th section, it would have been done for one-third of the price charged by the plaintiffs; and it further states that the goods and work, and labor and materials set forth in the second and third counts of the complaint are the same goods, work and labor and supplies, and the same cause of action mentioned in the first count, and were sold and delivered and furnished and performed under the resolutions above mentioned, and in violation of said 12th section of the amended charter, and not otherwise; and that the defendants are not indebted to the plaintiffs therefor in any sum whatever; and prays that the complaint may be dismissed with costs.

The 12th section of the act amending the charter of the city of New York, referred to by the defendants, is as follows:

" All work to be done and all supplies to be furnished for the corporation, involving an expenditure of more than $250, shall be by contract, founded on sealed bids or proposals, made in compliance with public notice for the period of ten days; and all such contracts, when given, shall be given to the lowest bidder, with adequate security. All such bids or proposals shall be opened by the heads of departments advertising for them, in the presence of the

comptroller and such of the parties making them as may desire to be present."

In April, 1849, an act had also been passed by the legislature of the state, amending the charter of the city of New York, by which the executive power of the corporation was vested in the mayor and certain heads of departments created by the act, and in such other executive officers, as should be from time to time created by law; and the common council, and every member and committee thereof, were prohibited from performing any executive business whatever, except such as should be specially imposed upon them by law, and except that the board of aldermen, might approve or reject the nominations of the mayor as therein provided. The act apportioned to each of the executive departments, created by it, the cognizance or control of certain specific matters pertaining to the executive powers or business of the corporation. The several departments, however, were made subject to the legislative regulation and direction of the common council, so far as not inconsistent with the act; and the common council was authorized to assign to them any duties not inconsistent with the same act.

The cause was tried by the court without a jury in December, 1857.

On the trial, the plaintiffs proved that a valid contract in writing had been made between them and the defendants, bearing date on July 3, 1848, whereby they agreed to supply the defendants, for one year from the date of the contract, with all the printing and binding, mentioned in specifications annexed to the contract, which the plaintiffs should require, and at the prices in said specifications stated; the printing and binding to be done from time to time as it might be wanted; the articles and work to be of the best quality, and the printing to contain about the same matter per page as in the samples, and the quantities to be varied as might be required; and all articles not

embraced in the specifications to be furnished at prices strictly proportionate to those specified. The specifications related strictly to the printing and binding of the proceedings, minutes and documents of the two boards of the common council, at stipulated prices per page or title. This contract was made in July, 1848, upon written proposals or bids for the work, having been invited by authority of a resolution passed by the common council, and the plaintiffs being the lowest bidders, were awarded the contract. The contract expired by its own limitation on July 3d, 1849. On the 30th of May, 1849, in order to carry into effect the provisions of the act of 1849, amending the charter, an ordinance organizing the departments of the municipal government of the city of New York, and prescribing their powers and duties, was passed by the common council and approved by the mayor. By section 507 of this ordinance, it was declared that until otherwise provided by ordinance, the ordinances and resolutions then in force should be applicable to the public printing; and neither in the act of 1849, nor in this general ordinance of May 30, 1849, is the subject of printing referred to any executive department; but on the contrary, throughout the ordinance the public printing is carefully reserved from the operation of any of its provisions, and is especially retained by the common council under its own cognizance ; and, no further ordinance affecting the subject having been passed by the common council prior to the performance of the work for which the action is brought, the plaintiffs continued to do all the public printing upon the terms stipulated in the old contract of July, 1848.

It was also shown at the trial that on one or two occasions after the passage of the resolution of December 16th, 1853, authorizing the employment of the plaintiffs to print "The City Charter with Kent's Notes," the common council had propositions before them providing for making new contracts respecting the public printing, but no definite

action was taken in the matter; and on the 13th of September, 1854, the board of councilmen passed a resolution approving of the " existing contract with the plaintiffs for printing for the legislative branch of the corporation," and so the matter was finally suffered to remain.

It was further proved that the books had all been delivered, and were, at the time of the trial, in the possession and use of the city; and that on June 18th, 1855, a resolution was passed by both boards of the common council, and approved by the mayor, directing the comptroller to pay the plaintiffs' bill.

JOHN W. EDMONDS and JAMES T. BRADY, *for plaintiffs.*
H. H. ANDERSON and GREENE C. BRONSON, for *def'ts.*

By the Court, WHITE, Justice.    Upon the above facts and the pleadings in the case, two questions are presented; first, whether the defendants are bound by the express contract made by the common council with the plaintiffs for the work in controversy ? and second, if the defendants are not bound by the original and express contract, have they, by accepting and using the books, rendered themselves liable to pay the plaintiffs for them what they are reasonably worth ?

It is a settled principle, that when a legislative power from which a corporation derives its authority to act prescribes a particular mode in which the act shall be performed, the corporation cannot lawfully perform the act in any other manner.    If not done in the manner prescribed, the act is a mere nullity and utterly void.

In the present case, the legislature having declared in the twelfth section of the act of 1853, that all work to be performed and all supplies to be furnished to the corporation of the city of New York, involving an expenditure of more than $250, shall be by contract, founded on sealed bids, &c., it follows, that the contract for the work done by

the plaintiffs, (if it is such work as is contemplated by the twelfth section of the act referred to,) should have been made as prescribed in that section; and that not having been made in that manner, it is null and void, and no action can be maintained upon it. (*See Brady* agt. *The Mayor, &c., of the City of New York*, 2 *Bosw.*, 173, *affirmed upon appeal to the court of appeals*, 20 *N. Y. Rep.*, 312.)

But the plaintiffs claim that the work which is the subject of this action was done, not under the employment or contract authorized by the resolution of the common council, passed on December 16, 1853, but under the old contract, made between the parties in July, 1848, which, the plaintiffs contend, was continued in full force to the time of the present transactions.

There is nothing, however, in the case to sustain this suggestion. This complaint sets up no such claim. The only contract, retainer or employment which the complaint alleges, or in any manner refers to, is the resolution of December 16, 1853, and the contract with, and retainer of, the plaintiffs by the defendants, "pursuant to the said resolution."

Again, the compensation agreed to be given to the plaintiffs for the work is not measured or controlled in any manner by the prices or terms of the old contract. In that contract the payment of forty-six cents per page for two hundred and fifty copies is provided for; while the contract price under the resolution of December, 1853, and set forth in the complaint, and for which judgment is demanded, is two dollars per copy, which is not only a different, but appears to be a much larger rate of compensation than that stipulated in the old contract. So that even were the contract of 1848, in existence at the time of the employment of the plaintiffs, it manifestly was not considered by either of the parties as in any manner affecting the agreement for printing the "City Charters," which they both evidently regarded as a new and independent undertaking. But the

old contract had expired, by its own limitations, in July, 1849.   And although the plaintiffs continued to print the proceedings of the common council, and to receive payment therefor, as usual, yet until August, 1854, there was nothing done that had even the semblance of an attempt to renew or revive it; and all that was done then was the passage of a resolution by the councilmen (one board only of the common council), recommending that the old contract be continued—a resolution which could have no effect whatever upon the rights or relations of the parties.

But we do not think that, after the act of 1853, the common council could, by any mere resolution, however formally passed, either make or give vitality to such a contract as that of July, 1848.   Even before the passage of the act of 1853, the ordinances of the corporation required that all contracts for work and supplies, involving a certain amount of expenditure, should be made upon bids or proposals invited by public notice; and this very contract of July, 1848, was made in that manner.

We repeat, therefore, that we can see nothing in the case to warrant the suggestion that the work in question was done under that old contract.

It was also urged by the plaintiffs, as a ground for maintaining the validity of the contract made with them pursuant to the resolution of December 16, 1853, that it was a legislative and not an executive act; that the books ordered to be printed were as necessary for the guidance and information of the members of the common council in the discharge of their legislative duties as their minutes, documents and journals, and were equally the subject of their legislative discretion, to order and contract respecting them, without any other restraint than their own sense of what was proper and necessary.   The common council, it is true, is vested with all the legislative power of the corporation; but it is a peculiarly restricted legislative authority, and is in every respect subject to the provisions of

the charter, the fundamental law of the corporation; and when that charter requires that certain legislative or executive duties shall be performed in a particular manner, or when it declares that a certain act, which is appropriate to both the executive and legislative departments, shall be done (whenever it is done) in a particular manner, without making any exception in favor of any officer or department, ministerial, legislative or executive, then these several departments of the city government must comply, in the performance of that act, with those special requirements of the fundamental law. There are, it is true, several matters pertaining to the city government which have not been assigned by law, or by ordinance of the corporation, to any of the heads of executive departments, and the administration of which, therefore, remains with the common council. (*See Peterson* agt. *The Mayor, &c.,* 17 *N. Y. Rep.,* 454.) The erection of new public buildings, when authorized by law, and the public printing, are instances of this kind. But in the administration of these branches or portions of the corporate business, everything must be done (so far as the nature or character of the particular subject will permit or render it possible,) as strictly in compliance with the provisions of the charter, both as it respects the thing to be done and the mode of doing it, as if the matter was in the control or management of the head of an executive department.

We conclude, therefore, that when the work of the public printing involves the expenditure of more than $250, it should be done by contract founded on sealed bids, &c.; in pursuance of the 12th section of the act of 1853; and that this is the law, whether the printing is required for the legislative or executive departments; and that no contract or employment for the performance of the work referred to, made in any other manner than that prescribed by said 12th section, is lawful, or valid, or of any binding force or obligation when it involves an expenditure of more than $250.

Upon this principle, the work done by the plaintiffs, and for which this suit is brought, was work which should have been contracted for in the manner and with all the formalities prescribed in the 12th section of the act of 1853; and as the contract for it was not made in that manner, it is null and void, and cannot be enforced against the defendants.

There only remains now to be considered the question, whether the defendants, having accepted and used the books, are bound to pay for them what they are reasonably worth, notwithstanding that the express contract under which they were furnished is null and void?

The plaintiffs' counsel has cited several authorities intended to sustain the affirmative of this proposition; but they all tend only to establish what has been long held as sound general doctrine, that a corporation can in ordinary cases be made liable on an implied as well as on an express *assumpsit* or promise. They do not, however, reach the case of a corporation which is deprived by statute of all capacity to contract, except in certain designated or prescribed forms. In the present instance the defendants can make no contract or promise, express or implied, except in the manner and with all the formalities prescribed by statute. No promise, or engagement, or act of acceptance, or ratification by the officers or agents of a corporation thus incapacitated, can render it liable, or give to any one a cause of action against it. The members of the common council, and other officers of the city government, are but agents of the corporation, entrusted with certain powers, which are to be exercised in a manner specially defined and provided. This is the extent of their authority. Anything they do beyond it is a nullity—so far as it is intended by it to bind their principal. A different doctrine would render void all attempts at legal restraint upon the conduct or acts of the defendants. If the principle could be maintained, that when an express contract, made in defiance of the restraints of the charter of the defendants, should be

declared void, the party seeking to recover upon it might abandon the claim on the express undertaking, and recover upon an implied promise, on the ground that the work had been done, or the supplies furnished, no matter how unauthorized by law the work or the supplies had been, it is obvious that the statute would be a mere nullity, and that all safeguards against improvidence and corruption would be overthrown. Such a doctrine could not be tolerated. These views, and the reasoning in support of them, are set forth more fully in the decision of this court in the case already referred to (*Brady* agt. *The Mayor, &c.*, 2 *Bosw.*, 173,) and we only now re-assert them.

Fully sensible of the hardship to which an adverse decision might subject the plaintiffs, who, without recompense, have parted with their property and labor upon an illegal and void contract, we have examined this case carefully, so that nothing might escape our notice which could tend to the plaintiffs' benefit. But we can see no ground upon which this action can be sustained. Whether in any other form of proceeding the plaintiffs can recover their property or its value, may be a question. In the present action they can have no relief. The judgment at special term must be affirmed, with costs.