Monell, J.
This submission is for the purpose of determining the liability of the defendants to pay for gas furnished by the plaintiffs to the public lamps in the month of September, 1864. The written contract between the parties expired by its limitation in July, 1859. No agreement has since been made, and it is contended by the defendants none can be implied.
The Harlem Graslight Company was incorporated in 1855, under the general incorporating act, passed in 1848, (Session Laws 1848, p. 48,) “for the purpose of manufacturing and supplying gas for lighting the streets and the public and private buildings,” in that part of the city north of Seventy-ninth street. At that time, no other gas company had obtained permission from the common council to lay conductors for conducting gas in any of the streets north of Seventy-ninth street, nor were any conductors laid therein. Companies organized under the general law are authorized to lay conductors only with the consent of the municipal authorities, which consent may be given “ under such reasonable regulations as they may prescribe.”
The permission granted to this company by the common ' council was contained in a resolution passed in 1855. It gave the consent of the corporate authorities “ in consideration of the following articles (among others) being faithfully complied with,” namely; that the company should furnish a supply of gas to all persons who might desire the same ; that it should proceed immediately * * * to lay mains in the district embraced in the grant, and within two years supply gas to be used by the corporate authorities or private consumers. The common council reserved the right to revoke the permission, upon proof of the failure of the company to comply with the conditions therein expressed, or with any resolution or ordinance which might be thereafter adopted.
The charter gave the defendants power to light the public streets, and confided its exercise to the street department. Hence it became the duty of the corporation to provide the necessary means for that purpose. (Hutson v. The Mayor, &c. of New York, 9 N. Y. Rep. 163.) The permission given *118 was accepted by the gas company with all its conditions and reservations, and thereby became a valid subsisting contract on their part. (Attorney General v. The Mayor, &c. of New York, 12 N. Y. Leg. Obs. 17. People v. Platt, 17 John. 195. Benson v. The Mayor, &c. of New York, 10 Barb. 223. McLaren v. Pennington, 1 Paige, 102.) The obligations imposed by this contract were, that the gas company would supply gas to the corporate authorities for the purpose of lighting the public streets, at such times and in such places, within their district, as the common council might from time to time prescribe ; and that they would also comply with any resolution or ordinance which might be adopted.
Two parties are required in the formation of a contract. It must be supported by a sufficient consideration, and must be mutually binding. By the adoption of the resolution of permission, upon the consideration therein expressed, and with the reservations and conditions therein contained, and its acceptance by the plaintiffs, the defendants became a party to the contract. Their authority to .engage in it was derived as well from their general duty to light the streets as from the general incorporating act before referred to, which in express terms empowered them to prescribe such “ reasonable regulations ” as they might deem proper. Such authority to give its consent, and to impose such restrictions and conditions as would furnish a consideration for the valuable privilege given, was a grant of power to the defendants to make a contract with the plaintiffs for a supply of gas to the public lamps. Putting, therefore, these transactions of the corporation and the gas company together, they furnish all the essential ingredients of a complete contract between the parties.
Ho statute that I am acquainted with prescribed any form of contracts, and it was not even necessary that they should be in writing. In Bonesteel v. The Mayor, &c. of New York, (22 N. Y. Rep. 168,) it was held that the bid by the contractor and its acceptance by the corporation constituted the agreement.
It cannot be doubted, I think, that as the parties stood *119 upon the adoption and acceptance of the resolution, the plaintiffs were bound (under a liability to have the license revoked for a failure to comply) to supply gas to be used by the corporate authorities, as directed by any ordinance of! the common council.
The contract being mutual, it imposed a corresponding obligation on the defendants'to allow conductors to be laid in the public streets, and, by implication, a promise to pay a reasonable price for the gas furnished. The latter is upon the familiar principle that where a person buys an article without stipulating for the price, he is presumed to have undertaken to pay its market value. In the absence, therefore, of any stipulation in the contract fixing the price or compensation for the gas to be furnished, and the contract being otherwise complete and within the scope of the authority of the parties, the law will supply a promise to pay its reasonable value.
The permisssion to lay conductors was unlimited in dura- . tion, but could be annulled by failure to comply with the conditions contained in the resolution. Until annulled, the plaintiffs are bound to supply gas wherever required by the corporation.
The contract of July, 1858, merely fixed the price of gas furnished to street lamps for one year, and does not annul the previous agreement. It was auxiliary to it. When it expired by its limitation, the price was left to be ascertained by the value of the commodity at the time of its consumption. By the charter of 1849, (Sess. Laws 1849, p. 278,) the department of streets and lamps had cognizance of procuring the necessary supplies for, and lighting the public streets. In this department there was a bureau, the chief officer of which was called the “ superintendent of lamps and gas.” It is admitted in the case before us that since the organization of the plaintiffs' company the lamps have been lighted within the plaintiffs’ district, under the direction and superintendence of that officer, whose duty it was to superintend the carrying into effect the ordinances of the common council, in respect to lighting the public streets, and to discharge the duty of the *120 defendants in that respect. Although a delegated power to an officer to superintend does not. necessarily clothe him with authority to bind the city by contract in respect to the functions of his office, yet I apprehend that his acts, as the authorized agent of the corporation, in directing the lighting of the public lamps in pursuance of general or particular ordinances, are binding, as being within the immediate scope of his authority, and merely in. the discharge of a duty resting on the corporation, and as carrying into effect the contract with the plaintiffs to supply gas where required. It appears that since the permission granted to the plaintiffs, the common council have, from time to time, adopted ordinances directing the plaintiffs to lay conductors in various streets not before lighted; and such streets have been supplied with gas by the plaintiffs under the original resolution of permission, and by direction of the defendants’ superintendent. Ho new contract was made ; but both parties recognized the existing contract as being in force. The corporation asserted its right to require the plaintiffs to supply gas under the resolution of April, 1855, and the plaintiffs admitted the obligation to furnish it.
It further appears that the corporation has annually represented to the legislature that a certain amount of money would be required for lighting, &c. the public streets, and the legislature has been asked to authorize the sum to be raised by tax ; and in 1864 the sum of $430,247 was authorized to be so raised. These several applications to, and acts of the legislature extending from the organization of the plaintiffs’ company to the present time, a period of ten years, are recognitions by the corporation of their obligation to pay, and ratifications by the legislature of the power of the corporation to light the streets, and necessarily, of their power to contract therefor, and may be regarded in the light of enabling acts.
In concluding this view of the question, I cannot see any reason for holding that there has not been, at all times, a subsisting legal contract by the corporation with the plaintiffs ; a contract authorized by law, complete in all essential parts, and of binding force and effect; under which the corporation may *121 be compelled to pay the reasonable value of all gas furnished to it by the plaintiffs.
But it is contended by the defendants that all contracts, to be binding upon the corporation, must be made in the manner prescribed by the charter, which requires that all work to be done, or supplies to be furnished for the corporation, shall be by contract, founded on sealed bids or proposals made in compliance with public notice, and shall be given to the lowest bidder. (Charters o/1849 and 1857.) If the claim of the plaintiffs rested upon a contract required to be made in pursuance of the foregoing provision, it cannot be sustained. Hone of those provisions were complied with, and the contract would therefore be void. (Brady v. The Mayor, &c. of New York, 20 N. Y. Rep. 312. Bonesteel v. The Same, ubi sup.)
In the view, however, which I have taken of the question, the provisions of the charter relative to the formation of contracts has no application whatever. The general act of 1848, for the incorporation of gas companies, has not been repealed by any of the charters of the defendants, or otherwise; and the power it conferred upon the municipal authority, to contract in the form adopted, with the plaintiffs, is unchanged by any subsequent statute.
In the interpretation of a statute, a thing not within the spirit or intent is not within the letter, (James v. Potter, 2 Seld. 9,) and when the intent is ascertained, it will prevail over, and give construction to the words used.
The object of the provision in the charters referred to, was to open to general competition all work and supplies needed by the public authorities. Bids or proposals are required to be invited by public notice, and contracts must he awarded, to the lowest bidder. It is not perhaps too much to say that in every species of work or supplies which can be competed for, it is the duty of the corporation to invite proposals, and to give the contract to the lowest bidder. But where there is no possibility of competition, and in respect to whose manufacture one company has the complete monopoly, it seems to me that the provisions of the charter cannot be deemed to apply, *122 and therefore impose no duty. The law must have a reasonable construction. If the object in a given case fails of accomplishment, the law construed by its intention must also fail. To advertise for proposals for a supply of gas in a district exclusively occupied by one gas company, would be a practical absurdity. It would enable that company to propose for the supply at a price much beyond the fair value ; and its single bid, (under the charter of 1861,) would entitle it to the contract at the price named, thus defeating the end designed, to secure the city from favoritism and jobbing.
It is not necessary to deny that illuminating gas comes under the denomination of supplies;, but the word in its application to the subject of contracts must be restricted in its signification and meaning to supplies which are, or may be the subject of a general competition, and which can be furnished by more than one person or company. Any other meaning given to the word would impute to the legislature the design of scheming with contractors to defraud the corporation, rather than an intention to protect its public treasury.
In The People v. Flagg, (17 N. Y. Rep. 584,) a city surveyor, under a resolution of the common council, had prepared maps of wharves and piers belonging to the corporation. Upon a mandamus to the comptroller to compel him to pay, Judge Comstock says : “ The language of this provision is somewhat broad, but I am quite well satisfied that it does not include the services of the particular kind now in question. In a large sense, the term “ work” may include all labor, whether mental or corporeal; but it has a more restricted sense, which may confine it to the various kinds of manual labor which may properly be the subject of general competition, and can safely be awarded to the lowest bidder.” The' case went off on other grounds, and the language quoted from the opinion was not adopted by the court, and was repudiated by one of the judges, but expressly upon the ground that the work could have been competed for. Nevertheless, the case sustains the proposition that the restrictive power of the corporation .to contract must be confined within the spirit and intent of the law, is not uni *123 versal in its application, and, although directory as regards subjects within its purview, does not deprive the corporation of power to contract in other ways, in respect to matters not embraced within the restrictive clause. The corporation, irrespective of its charter, has general power to contract. The restriction is modal merely. (Peterson v. The Mayor, &c. of New York, 17 N. Y. Rep. 449.) Judge Hoffman, in The Farmers’ Loan and Trust Co. v. The Mayor, &c. of New York, (4 Bosw. 89,) says., there must be a class of cases in which the very object of the exercise of a municipal power would indicate the inapplicability of the provision; as where the whole object would be defeated if the corporation was compelled to advertise and give the contract to the lowest bidder.
In the exercise of all governmental powers, the officers of the government must be clothed, necessarily, with some discretion; statutes intended to weaken or destroy such discretion must be regarded as in derogation of a natural right, and should not be extended beyond the plain intent. Hence any interference with vested rights and powers must be restricted to subjects intended to be affected, and not enlarged to cover cases not within the object to be accomplished.
Enough,'I think, has been said to show that the corporation, in obedience to its duty to light the streets, is not compelled to advertise for proposals for a supply of gas. There could be no competition, and but one bid. It is true, the obligation to light the streets does not necessarily require the use of gas. Oil lamps could be employed. But the right to use gas is clearly within the discretion of the corporation, and their contract with the plaintiffs requires that they shall use it, and it would be a breach of faith, as well as of contract, to use any other commodity.
Although it may not be regarded as an open question in this court, I am, nevertheless, of the opinion that the plaintiffs having, by the request of the defendants, supplied gas to the public lamps, which had been received, accepted and consumed by them, the.plaintiffs are entitled to recover upon a quantum meruit. It is a general principle, that when a void or voidable *124 contract has been fully executed, and its benefits have been received and accepted, the law will imply a promise to pay a reasonable compensation; this principle, in its application to persons and private corporations, is undoubted. (Feeter v. Heath, 11 Wend. 477. Sherman v. N. Y. Central Railroad Co., 22 Barb. 239.) And I can discover no reason for not applying it to a public or municipal body. The case of McSpedon v. The Mayor, &c. of New York, (7 Bosw. 601,) I know holds the other way; and if this case turned on that point, I should be bound by that decision. In that case, the common council directed, by resolution, the printing of Yalentine’s Manual, and the court said there should have been sealed bids invited by public notice, and held there was no contract, and no recovery could be had upon a quantum meruit.
Contracts, which are ultra vires, cannot be made at all by a corporation; therefore none can be implied. But when the power is clear, and the omission is something merely modal, neither a natural person nor an artificial body can be allowed to accept the benefit and escape the liability. Hodges v. The City of Buffalo, (2 Denio, 110,) and Halstead v. The Mayor, &c. of New York, (3 Comst. 430.) were cases of contracts, ultra vires. There being no original power to contract, no subsequent act of acceptance or ratification could imply a promise. I do not understand any of the cases, with the exception of McSpedon v. The Mayor, as going any further. In Peterson v. The Mayor, supra, Judge Denio says : “ That when the public functionaries omit to observe designated forms, no subsequent act] of recognition can supply a defect in these respects.” But the right to recover on a quantum meruit was not involved, and the case was decided upon another ground.
With the exception, therefore, of the case in this court, I think the question may be regarded as an open one, and I think the weight of reason, as well as authority, (as I will presently show,) is opposed to the doctrine of that case. Parties dealing fairly and honestly with a corporation, in the belief that the officials and agents are faithful in the discharge of duty, ought not to be deprived of a reasonable compensation by reason of *125 any dereliction of such, officers. No wrong can be done to the corporation or those they represent. The same end, in effect, is attained as would be rendered by giving public notice; for it is presumed that no proposal below a fair and reasonable price would be made, and such is the only measure of a recovery upon a quantum meruit.
The English cases are uniform on this subject. In Clark v. The Guardians of the Cuchfield Union, (1 Low. & M. 81,) Wightman, J., says : “ Whenever the purposes for which a corporation is created renders it necessary that work should be done or goods supplied to carry such purposes into effect, and orders are given at a board regularly constituted, and having general authority to make contracts for work or goods necessary for the purpose for which the corporation was created, and the work is done or goods are supplied and accepted by the corporation, and the whole consideration for payment is executed, the corporation cannot keep the goods, or the benefit, and refuse to pay on the ground that though the members of the corporation, who ordered the goods or work done, were competent to make a contract and bind the rest, the formality of a deed, or of affixing a seal, is wanting, and therefore that no action lies, as they were not competent to make a parol contract, and may avail themsleves of their own disability.” And in Sanders v. St. Neot’s Union, (8 Q. B. 810,) where the action was for gates furnished for the workhouse of the Union, the court says : “We think the defendants cannot take the objection that the contract was by parol, inasmuch as the work in question, after it was done and completed, was adopted by them for purposes connected with the corporation.”
Mills v. Gleason, (11 Wis. R. 470,) involved the effect of a subsequent ratification by a municipal corporation, in rendering valid acts which were previously unauthorized. Paine, J. says : “ If the city adopts it, and receives the benefit of it, it is as much bound as if they had authorized it in the first instance ; every thing was done necessary to authorize the issuing of the bonds, except the publication of the charter, all the parties supposing it to be in force. If, after it was in force, *126 the city received the proceeds, and appropriated them to its own use, and recognized the validity of the bonds, we could not well imagine a case more fit for the application of this rule.” I also refer to the case of Bigelow v. City of Perth Amboy, (1 Dutch. 297,) and to Messenger v. City of Buffalo, (21 N. Y. Rep. 196.)
The notice given by the plaintiffs in August, 1864, of a change of price, does not, it seems to me, affect this question. It was not agreed to, or acted upon by the defendants. Under the existing contract they are liable only for the reasonable value of the gas consumed ; they cannot be deemed, by their silence to have acquiesced in any other measure of compensation. It is, however, unimportant, inasmuch as it is admitted that the reasonable value of the gas is the same as stated in the notice.
Upon the whole, I am of opinion that the plaintiffs are entitled to judgment for $13,037.50, the amount claimed for gas consumed, and $721.03 government tax, with interest upon these sums from the time of the demand, with costs.