THE CENTRAL GOLD MINING COMPANY *v.* SAMUEL R. PLATT & SONS. ·

In the absence of legislative restriction, corporations have full authority to sell and convey their property, upon special trusts or otherwise; and where the legislature prescribes the purpose for which such act is to be performed, the courts are disposed to construe such grants of power in a liberal way. Although the statute (1 Rev. Stat., 600, § 3), enacts that corporations shall only possess or exercise such additional powers, beyond those given by their charter or some general law, as are necessary to the exercise of those expressly given, such necessity will not be construed to be an absolute one, but one including such other things as are implied in the principal grant or appurtenant thereto or convenient and ordinarily exercised therewith.

By the amendment of the general act for the incorporation of mining, manufacturing &c. companies, passed in 1864 (Laws of 1864, chap. 517, § 3), power was given to companies organized under the general act to execute mortgages of their real estate as security for debts then existing or such " as might be contracted in the business of the corporation." The plaintiff, a corporation organized under the general act, executed to two trustees a conveyance of certain real estate in Colorado territory, to secure the payment of certain coupon bonds of the company, payable to the trustees or bearer, the bonds containing a recital, that they are not to be obligatory until indorsed by the trustees. The trust-deed contained a power authorizing the trustees, in case of default for sixty days in the payment of any bond or interest due thereon, to enter upon and enjoy the mortgaged property, and sell the same in New York city. The corporation claiming that the mortgage was void by reason of its not having been given for purposes declared in the statute, prayed for an injunction restraining the trustees from selling the mortgaged property, after default in payment or the bonds.

*Held,* that the mortgage was authorized by the statute, and conferred a valid title upon the trustees, and the court would not restrain them from enforcing the rights of such *bona fide* creditors as held any of the bonds mentioned in the mortgage.

*Held,* further, that a court of equity of this State has no authority to enjoin a mortgagee of lands situated without the State from selling the mortgaged lands by public sale within this State, according to the terms of the mortgage security, upon the mere allegation that such power is void, where no contrary statute of the State or Territory where the lands are situated is stated, nor any invalidity in the power is made apparent.

APPEAL from an order made at special term, denying a motion to vacate an injunction.

The action was brought to enjoin and restrain the defendant, Platt, from interfering with the possession of the plaintiff's property situated in Colorado, and from selling it, and to declare and adjudge a certain mortgage or trust-deed executed by the plaintiff's former officers to be void, and to adjudge certain bonds of the company alleged to be secured by such mortgage to have been illegally issued, &c.

The allegations on which this relief was sought are set forth in the opinion of the court.

A preliminary injunction was granted at special term, and and a motion made by the defendant, Platt, to vacate the same, was denied by Daly, Ch. J. The defendant appealed from the order denying the motion.

*Clarkson N. Potter*, for appellant.

I. The plaintiff had at common law power to contract debts and to issue its bonds or other evidences of its indebtedness, and it had also general powers, except so far as restricted by statute, to alienate and mortgage its property (2 Kent's Com., 281; Angell & Ames on Corp., § 191), and this as well by trust-deed as by ordinary mortgage (*De Ruyter* v. *St. Peter's Church*, 3 N. Y., 238). The Statute of Trusts has no relation to securities by way of mortgage (*King* v. *Merchants' Exchange Co.*, 5 N. Y., 547). The instrument in this case is a conveyance only by way of mortgage, *i. e.*, a conditional conveyance to secure a debt.

II. The mortgage set forth in the complaint was authorized by the statute of 1864. It was given with the written consent of two-thirds of the stockholders of the company, and such consent was duly filed before the giving of the mortgage. While it is admitted that the company had power to mortgage its realty to secure an indebtedness incurred previous to, or cotemporaneously with, the execution of the mortgage, it is denied that it had power to make a mortgage to secure an indebtedness incurred after its execution. There is, however, no such distinction to be found in the language of the statute. It declares the power of the company to extend to all debts " heretofore contracted ;" *i. e.*, contracted *before* May 2, 1864, or that "may

be contracted;" *i. e*, contracted *after* May 2, 1864. To read the words " may be " contracted as meaning "*may have been*" contracted, would exclude as well cotemporaneous, as future debts.

III. Indeed, the mortgage in question *was given* to secure a cotemporaneous debt.

The lien of the mortgage attached so far, and only so far, as bonds were actually disposed of. As the debts incurred by such bonds came into existence, the lien of the mortgage came into existence also. Until such bonds were actually issued, *no debt was incurred, and no lien whatever existed* (*Coddington* v. *Gilbert*, 17 N. Y., 490). And intervening judgments would attach as liens, when recovered, to the exclusion of the lien for the unissued bonds (*Brinkerhoff* v. *Marvin*, 5 Johns. Ch., 326; *Craig* v. *Tappan*, 2 Sandf. Ch., 90; *Goodhue* v. *Berrien*, *Id.*, 634; *Robinson* v. *Williams*, 22 N. Y., 388). The statute authorizing railway companies to mortgage their property is an authority " to mortgage their corporate property and franchises to secure the payment of any debts contract*ed* by the company." And yet this has been uniformally held to authorize a mortgage to secure an issue of bonds to be actually put out *after* the mortgage was made (*Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb., 284; *Coe* v. *Pennock*, 23 How. U. S., 117; *Durham* v. *R. R. Co.*, 1 Wallace, 266).

IV. There is nothing in public policy that forbids mortgage like that in question. It was at one time thought that mortgages by individuals to secure future advances, were not valid. But the contrary has been well settled for many years (*Robinson* v. *Williams*, 22 N. Y., 382). Indeed, it is immaterial what the amount of the advances may be, if the amount stated in the mortgage exceeds the actual sum that comes to be advanced (*Miller* v. *Lockwood*, 32 N. Y., 393). If public policy is to be considered in construing the statutes of 1864, it is respectfully submitted that it forbids mortgages for pre-existing rather than for cotemporaneous debts or future advances. A power to mortgage for pre-existing debts gives to the company power to discriminate against creditors by preferring one to the exclusion of others. Whereas, the power to

mortgage for cotemporaneous debts, or for future advances, gives no preference against existing creditors, since it substitutes the moneys advanced for the property mortgaged ; and, so far as such advances may be upon insufficient consideration or not *bona fide*, it is open to be contested by creditors. No creditor of the company could, in any event, recover anything of the company until he had obtained judgment. This mortgage, therefore, was not necessarily an obstacle to any creditor's rights.

V. The objection of want of power and *ultra vires* is not meritorious, and is one to be raised by the State alone—not by the debtor himself. (*Silver Lake Co.* v. *North*, 4 Johns. Ch., 373; *Bissell* v. *M. S. & N. I. Co.*, 22 N. Y., 268.) • Even if this mortgage were void, as is claimed by plaintiff, that would afford no ground for the interference of this court to restrain the sale. The sale would, in that event, *pass no title*, and should not be restrained. If, on the other hand, the mortgage is valid, the sale should proceed.

VI. How far the bonds secured by the mortgage were fully issued, and how much may be due thereon to Smyser or any particular bondholder is a question to be settled by the trustee at his peril when he receives the proceeds of the sale, and is not to be *pre*determined here. And the trustee's action can then, *if necessary*, be controlled by the court.

VII. This debtor is estopped from setting up that its own acts, done by the very officers who now repudiate them, with the written and filed consent of a very large majority of its shareholders, and after it had repeatedly asserted their validity, were unauthorized. (*Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y., 273; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 30 N. Y., 30.)

*Titus B. Eldridge*, for respondent.

I. The consideration of the validity of the trust deed does not necessarily involve the legal liability of the company to pay the bonds issued by it so far as they have, for value, passed to the hands of innocent purchasers. If the company is liable for the payment of the bonds or any portion of them, the hold-

ers have their remedy against the company, and it is not necessary to their protection that the trustees named in the trust deed shall carry out the powers of sale therein contained. The bondholders gain nothing by this summary method, while the rights of the stockholders may be seriously impaired.

II. A corporation has no other powers than such as are specifically granted, or are necessary to carry into effect the powers expressly granted. Where a corporation relies upon a grant of power from the legislature for authority to do an act, it is as much restricted to the mode prescribed by the statute for its exercise, as to the thing allowed to be done. (See *Farmers' Loan and Trust Co.* v. *Carroll*, 5 Barb., 613; *Brady* v. *Mayor*, &c., 2 Bosw., 173, 183; 20 N. Y., 312; *Adriance* v. *Roome*, 42 Barb., 399.) Corporations with general powers are authorized to borrow money when it is necessary to the transaction of its ordinary business, but not beyond that; it is an incidental, not a principal power. (See *Beves* v. *Phœnix Glass Co.*, 14 Barb., 358; *Partridge* v. *Badger*, 25 Barb., 146; *Mead* v. *Keeler*, 24 Barb., 20; *Curtiss* v. *Leavitt*, 15 N. Y., 9.) The charter and by-laws of the Central Gold Mining Company do not give authority to the officers to borrow money. No vote or act of a corporation can enlarge its chartered authority, either as to its subjects on which it is intended to operate, or the persons or property of the corporation. (*Salem Mill Dam Co.* v. *Ropes*, 6 Pick., 23.)

III. The power of trustees to execute a mortgage under the provisions of the act of 1864 is dependent on two express conditions, which are made essential to the grant of such power and the exercise thereof, which are as follows: (1.) The corporation must owe a *bona fide* debt, made in the regular transactions of business for which it was incorporated, and the mortgage must be executed to the creditor to secure the payment of such debt. (2.) The written assent of the stockholders owning two-thirds of the stock of such corporation to the execution of such mortgage must be obtained and filed.

The existence of the debt is made essential to the grant of power; not as a mere incident, but as a primary source of such power; and without such subsisting *bona fide* debt the power is prohibited, and the execution of the mortgage is a void act.

The trustees of a corporation are not authorized to create a debt for the purpose of conferring the authority so carefully reserved by the statute. It was not the intent of the legislature to permit the officers of corporations to create debts at their will, and then pledge the company's property to their payment. The general power to make mortgages is prohibited for the purpose of preventing such wasteful and improvident management.

The trust deed or instrument executed by this corporation is wholly unauthorized under the statute of 1864. It is more than a mortgage and by its terms confers powers on the trustees named in said trust deed, which a corporation thus organized cannot do.

It authorizes such trustees, on default of the company in the payment of the principal or interest named in the bonds, to take absolute possession of the property of the company, and to advertise and sell the same to the highest bidder for cash; and on making such sale, to execute and deliver deeds therefor to the purchasers thereof. In other words, by the terms and conditions of the instrument, the power of strict foreclosure is conferred upon the said trustees, and the corporation is divested of its equitable right of redemption, granted to judgment and mortgage creditors by the laws of Colorado, where the estate is situated. (Laws of Colorado, page 266, § 13, page 270, § 23.)

A Court of Equity is the only power that could authorize a strict foreclosure—barring the statutory right of redemption, and this power is only exercised in extreme cases, on full hearing.

By the Court.*—Robinson, J.—The plaintiffs are a corporation formed under the General Manufacturing Act of this State (Laws of 1848, chap. 140) and the acts amendatory thereof, and institute this action to enjoin the defendant, Platt, from interfering with, or selling certain real estate owned by them, situate in Gilpin County, in the Territory of Colorado, which they mortgaged to him and one Belcher (since deceased), by a mortgage

---

* Present—Robinson, Loew, and Larremore, JJ.

The Central Gold Mining Company v. Platt.

or trust deed, by way of mortgage, dated May 13, 1865, and to adjudge certain bonds secured thereby, some of which are held by the defendants, Smyser and Peter, to be void. This mortgage was executed with the consent of at least two-thirds of the stockholders, as required by the second section of the amendatory act of 1864 (Laws of 1864, chap. 517), and their certificate was filed in the office of the Clerk of Gilpin County, March 20, 1865, prior to the execution and acknowledgment of the mortgage deed by the trustees, Platt and Belcher.

The instrument in question recites that it was made to the mortgagees, as trustees, to secure the payment of certain coupon bonds of the company, payable to Platt and Belcher, or bearer, on the 13th day of May, 1867, with annual interest, 180 of which were for $500 each, and 100 for $100 each, and each bond recites that it was not to be obligatory until it should be authenticated by a certificate endorsed thereon and signed by the trustees. The mortgage or trust deed by way of mortgage, contained a power authorizing the trustees, or the survivor of them, in case of default for sixty days in the payment of principal or interest, to enter upon and enjoy the mortgaged property, and on their own motion or upon requisition of the bondholders to advertise and sell the same, at public sale, in Colorado Territory, or in the city of New York.

Default having been made in the payment of both principal and interest, the defendant, Platt (the surviving trustee), in accordance with the terms of the mortgage, has advertised the property for sale at the Trinity Buildings, in the city of New York, and was proceeding to sell accordingly, when he was restrained by a temporary injunction issued out of this Court, which, upon motion and after argument was continued, during the pendency of this action.

Allegations are made in the complaint that the defendants, Smyser and Peter, are the holders of some of these bonds, but that the owners of the others of them are unknown. An appeal has been taken from the order continuing the injunction, and there does not appear to be any substantial grounds urged or presented for its maintenance, except—

1st. That the mortgage was wholly void, because (as is al-

leged), it was made and executed to trustees, and not to real creditors; that it was not given to secure any absolute present and subsisting indebtedness of the corporation, or, in the language of the statute (Laws of 1864, chap. 517, § 2), for "any debt heretofore (theretofore) contracted, or which may (might) be contracted by it (the corporation) in the business for which it was incorporated;" and,

2d. That the surviving trustee cannot sell the property in the city of New York under the deed of trust, and could only effect a foreclosure and sale of the property by an action brought for that purpose.

In aid of the first objection, it is alleged that of the $200,000 of bonds referred to in the mortgage, those to the amount of $20,500 were sold at par in satisfaction of a conditional debt of the company, that others, to the amount of $67,000, were sold at a discount of from 25 to 50 per cent., and that the remaining bonds, to the amount of $33,000, were, about May 12, 1866, pledged to Wilson and Peter (of which firm the defendant, Peter, is survivor), on a loan of $5,000, which not being paid, they had caused the bonds to be sold, and had become the purchasers for the $5,000 and interest; and that such sum of $5,000 was borrowed, and applied to pay interest on said $67,000 of said bonds then outstanding.

The question raised by this objection goes to the entire validity of the mortgage, and is one of serious moment to the holders of large amounts of bonds of a similar character issued by various corporations, and secured by mortgage to one or more trustees, providing for the payment of debts and obligations having no existence at the time of the execution of the mortgage, but which were intended to be secured thereby, and to become the subject of the security as they were subsequently contracted. Corporations formed under the General Manufacturing Act (chap. 140, of the Laws of 1848) were authorized "to purchase, hold, and convey real and personal property necessary to carry on such operations as were mentioned in their certificate of incorporation," but were prohibited from mortgaging or giving any lien thereon. This prohibition was relaxed by the amendment of 1864, authorizing any of such

corporations, upon written consent of two-thirds of its stock-holders being filed in the county where the property was sit-uate, "to secure the payment of any debt heretofore contracted or which may hereafter be contracted, in the business for which it was incorporated, by mortgaging all or any part of its real estate."

The General Railroad Act (Laws of 1850, chap. 140, § 28, sub. 10) authorizes railroad corporations to borrow such sums of money as may be necessary to completing and furnishing, or operating their railroad, and to issue and dispose of their bonds for any amount so borrowed, *and to mortgage their corporate property and franchises to secure any debt contracted for the purpose aforesaid.*"

The similarity in the terms of the power to mortgage given by these acts, is such that any decision holding the lien of a mortgage in trust, given by a corporation incorporated under the former statute, to secure debts to be thereafter created, to be void, must necessarily invalidate the mortgages given to secure a great mass of bonds that have been issued under like powers, by railroad and other corporations.

The opinion of Chief Justice Daly, upon granting the order appealed from, is adverse to the power of corporations formed under the act of 1848, to execute mortgages to trustees, intended to secure debts not existing cotemporaneously with the execution of the mortgage. In this I differ from him, and regard such a limited construction of the statutes in question as unnecessary and unwarranted by authority.

Without legislative restriction, corporations have full authority to sell and convey their property, and this includes a power to convey upon any special trust (*De Ruyter* v. *St. Peter's Church*, 3 N. Y., 238); also to mortgage or pledge their property for the payment of debts (Angell & Ames on Corp. § 191, *Gordon* v. *Preston*, 1 Watts (Pa.) 385; *Clark* v. *Titcomb*, 42 Barb., 122), and to provide therein for the extension of the security to after acquired property (*Pennock* v. *Coe*, 23 How. U. S., 117).

When the legislature prescribes the purpose for which or the mode in which any such act is to be performed, and it be

done in any other manner, it is a nullity and utterly void (*Mc-Spedon* v. *The Mayor, &c. of N. Y.*, 7 Bosw., 601; s. c. 20 How. Pr., 395; *Hood* v. *N. Y. & N. H. R. R. Co.*, 22 Conn., 502).

But the courts are disposed to construe such grants of power in a liberal way, and although our statutes (1 Rev. Stat., 600, § 3) enact that corporations shall only possess or exercise such additional powers beyond those given by their charter or some general law as are necessary to the exercise of those expressly given; such necessity is, however, not an *absolute* one, but includes such other things as are implied in the principal grant or are appurtenant thereto, or convenient and ordinarily exercised therewith.

The power conferred by the amendment of 1864 to mortgage as security for debts then existing, or *as might be contracted in the business of the corporation*, was in general terms, and prescribed no particular form or mode in which such mortgage should be executed, and only restricted its creation to securing " debts contracted in the business of the corporation." It was a statutory grant to do what the corporation, if unrestricted by its charter, might have done under its common law powers, and there is no apparent reason why it should be differently construed.

Such a general power to mortgage for existing or future debts had reference to the several modes in which, and purposes for which, such an instrument could then be legally executed (*Conger* v. *Hudson R. R. Co.*, 12 N. Y., 198), to wit: by agreement enforceable in equity to execute such an instrument, by absolute deed with a defeasance; or upon an agreement that it was given as security or to reconvey on payment of the debt; by mortgage with or without any statutory power of sale, and also by mortgage to one or more trustees for the benefit of several creditors, as well for existing debts, as also to secure future advances or subsequently accruing obligations—such as for money to be thereafter raised, on the issuing of bonds therefor or upon the sale of such bonds. Mortgages of this latter character had, previous to the passage of these acts, received the express sanction and recognition of our Court of Appeals, in

*King* v. *Merchants' Exchange Co.* (5 N. Y. 547); *Curtiss* v. *Leavitt* (15 N. Y. 63, 169, 206, 221, 268). See also *Wright* v. *Bundy* (11 Ill. 398).

They were mortgages of a well known character, standing as security for debts to be thereafter, from time to time, contracted by the corporation in the course of its business, and to be evidenced by the issue to the creditor of some one or more of the intended bonds on receiving a due consideration therefor. I am of the opinion that nothing is alleged in the complaint to show the invalidity of the title of the defendant, Platt, as trustee, for the benefit of any such outstanding creditors under the mortgage in question, or which should prevent him, as surviving trustee, from enforcing the rights of such *bona fide* creditors as hold any of the bonds described in the mortgage in question.

As to the second objection, to the attempted exercise of the power of sale contained in the mortgage or deed in trust, in the city of New York, in accordance with the terms of the agreement between the parties, upon the ground that it is void, I regard it as also untenable. The title of the mortgagees to the real estate mentioned in the mortgage, is governed by the laws of the State or Territory in which it is situated, and the validity of the mortgage in question and rights of the owners of the equity of redemption, depend upon the laws of Colorado relating to real estate which existed at the time of its execution. While the laws of the State or government in which a corporation is created, defines its capacity to act, the laws of the State in which any real estate in or over which it attempts to acquire an interest or to exercise any act of ownership, is situated, must govern as to the force and effect of the act it seeks to enforce or perform. While the plaintiff, by the laws of the State of their creation, had general authority to mortgage their real property to secure debts contracted in their business, the laws of Colorado, within which the lands are situate, must govern as to their power to execute a mortgage upon them, as to the mode of its execution, the form and effect of the instrument, and as to such title as can be acquired in the manner prescribed by the local law, and this applies to mortgages as well as absolute deeds

(*Hosford* v. *Nichols*, 1 Paige, 220 ; *Peck* v. *Cary*, 27 N. Y. 11 ; Story on Conflict of Laws, §§ 364, 474). Aside from the mere power of corporations to mortgage their lands to secure debts contracted in their business with the consent of their stockholders, the validity or invalidity of the mortgage, the rights of the mortgagee, and the mode of foreclosing the equity of redemption, all depend upon the laws of Colorado. If the rule of the common law prevails there, the absolute fee was vested in the mortgagee, and the interest of the mortgagor being forfeited by his default, he had no relief except through a bill to redeem. The mortgagee, as trustee for the bond-holders, is attempting to pursue his remedy according to the letter of his contract.

The complaint discloses no ground for equitable relief against his proceedings in conformity with its terms, except such as are alleged against the legal efficacy of the mortgage and of the power of sale under it.

No averment is made as to the *lex rei situ* to show any illegality or inequity in the trustees proceeding to sell the property in the prompt and easy manner agreed upon by the parties, to enable the creditors to speedily realize their money, without the expense or delay of foreclosure by bill in equity (*Richards* v. *Holmes*, 18 How. U. S. 135) ; and no case of fraud, accident, or mistake is presented, requiring the interposition of a court of equity, for the purpose of compelling him to perform some act or duty with respect to which it has, by the service of process, acquired jurisdiction and power of supervision over him.

The summary mode of foreclosing mortgages on property situate within this State, and selling the same, is regulated by statute (2 Rev. Stat. 345, &c.), but such act has no extra-territorial application or reference to lands without the State, and a court of equity of this State has no authority to enjoin a mortgagee of lands, situate without the State, from selling the mortgaged lands by public sale within this State, according to the terms of the mortgage security, upon the mere allegation that such power is void, where no statute of the State or Territory where the lands are situated, nor any other invalidity in the power, is stated or made apparent.

In my opinion, this mortgage is (for aught that appears) perfectly valid and the power of sale rightly exercised. For these reasons, the order continuing the injunction should be reversed, and the injunction dissolved with costs.

Order reversed.