## Jones v. Guaranty and Indemnity Company.

1. A corporation of New York having authority to mortgage its property for the purpose of carrying on its business is not prohibited by the laws of that State from executing such a mortgage to secure the payment of money to be thereafter advanced.

2. A., as president of B., a corporation, applied to C. for a loan. The latter then advanced $50,000, taking therefor a note of B., payable to the order of D. & Co., — of which firm A. was a member, — and bearing their indorsement. A. also stipulated to deliver to C., B.'s mortgage on its real estate for $100,000, as security for said $50,000 and for any further loans from C. to B. The execution of the mortgage was assented to in writing by B.'s trustees and by A., who was its creditor to a large amount and the holder of nearly all of its capital stock. The mortgage describes the individual obligation of A. as the liability to be secured, but recites that its execution was authorized to secure a loan of $100,000; that A. had given to C. his personal bond in that sum to secure advances made as therein stipulated. It was conditioned for the payment by B. of the amount that might be due upon the instrument secured by it. The bond bears even date with the mortgage. It recites that it was given to cover any advances made or to be made to A. by C. to the amount of $100,000 or less, on condition that such advances and their payment should be indorsed thereon, as fixing the amount of indebtedness, for all of which certain premises that day conveyed by B. to C. by indenture of mortgage shall be liable. Upon the delivery of the bond and mortgage to C., B.'s note for said $50,000 was renewed, and the amount thereof indorsed on the bond as an advance of that date. The bond shows two other advances to A. of $25,000 each, for one of which a note of B. for that amount payable to his order, and duly indorsed, was delivered as collateral, and for the other a warehouse receipt for oil, given by B. to him. The receipt proved worthless, and the note was subsequently renewed. None of B.'s notes were paid, but the money advanced to A. was used for the benefit of B. *Held*, 1. That it was the debt of B. and not that of A. which was intended to be, and is, secured by the mortgage. 2. That parol evidence was admissible to show such intent.

APPEAL from the Circuit Court of the United States for the Eastern District of New York.

The New York Kerosene Oil Company and the New York Guaranty and Indemnity Company were corporations organized pursuant to the laws of New York.

On the 15th of February, 1867, Abraham M. Cozzens, as the president of the Oil Company, applied to the Guaranty Company for a loan of $100,000. The sum of $50,000 was advanced to him, and he thereupon delivered to the Guaranty Company the note of the Oil Company for that amount, of the date above

mentioned, payable to and indorsed by A. M. Cozzens & Co., and having sixty days to run.   At the same time he gave to the Guaranty Company a memorandum signed by him as such president, whereby he stipulated that he would cause to be prepared a mortgage by the Oil Company to the Guaranty Company on the real estate of the former therein mentioned, for the sum of $100,000, to be held by the latter as security for the $50,000 so lent, and for any further loan thereafter made by the Guaranty Company to the Oil Company.   Cozzens thereupon procured a formal order to be made by the trustees of the Oil Company that such a mortgage should be executed, and the written consent of the holder of more than two-thirds of the stock of the Oil Company was given to the same effect.   Both were necessary to the validity of the mortgage.

The capital stock of the Oil Company was $500,000, and Cozzens owned of it $493,000.

Passing by some intermediate details not necessary to be particularly stated, Cozzens caused to be prepared the bond and mortgage here in question, and both were duly executed.   The counsel who prepared them made the mortgage describe the individual obligation of Cozzens as the liability to be secured instead of the debt of the company; but the mortgage recited that the Oil Company had authorized the giving of the mortgage to secure a loan of $100,000, and that Cozzens had given to the Guaranty Company his personal bond in that sum to secure advances, not to exceed that sum, to be made to Cozzens, upon the conditions in the bond mentioned, and that the requisite consent of stockholders had been given.   The mortgage was conditioned for the payment by the Oil Company, and not by Cozzens, of the amount that might be due upon the instrument secured by it.   The bond is set out at length in the record.   It states that it was given to cover any advances then made or thereafter to be made by the Guaranty Company to Cozzens to the amount of $100,000 or less, on the condition that whenever any sum was so advanced the amount and date of the advance should be indorsed on the bond and signed by Cozzens, and that when any payment was made by Cozzens such payment should be indorsed in like manner, and that the amount which, according to the indorsements, should appear to be due on the

bond should be considered as the amount due, "and for which the premises which have. this day been conveyed to the said New York Guaranty and Indemnity Company, by the New York Kerosene Oil Company, by indenture of mortgage bearing even date herewith, shall be liable, and for no greater sum."

The mortgage and bond bear date on the 29th of April, 1867, but were delivered and took effect on the 11th of May following. The indorsements on the bond show that Cozzens received from the obligee three several advances, — one of $50,000, and two of $25,000 each. No credits are indorsed. The note of the Oil Company, indorsed and delivered to the Guaranty Company on the 15th of February previous, when the first loan of $50,000 was made, was renewed when the bond and mortgage were delivered, and the amount was indorsed on the bond as an advance of that date. It was renewed several times subsequently, and the Guaranty Company holds the last renewal. When one of the advances of $25,000 was made, a note of the Oil Company for that amount to Cozzens & Co. was indorsed and delivered as collateral. That note was also renewed from time to time, and the last renewal is held by the Guaranty Company.

When the other advance of $25,000 was made, a warehouse receipt for oil, given by the Oil Company to Cozzens, was indorsed and delivered as a collateral. The receipt proved worthless. Nothing was ever received upon it. It is not controverted that the Oil Company owed Cozzens more than $100,000 for his advances to it, nor that every dollar of the loans in question were used for its benefit. Not the slightest taint of dishonesty is shown in these transactions, nor is any thing disclosed which warrants the suspicion of such a purpose.

The Oil Company was expressly authorized by the act under which it was organized to secure the payment of its debts theretofore or thereafter "contracted by it in the business for which it was incorporated, by mortgaging any or all real estate of such corporation," and it was declared that "every mortgage so made shall be as valid to all intents and purposes as if executed by an individual owning such real estate."

In March, 1868, Cozzens and the Oil Company became insol-

vent. Their paper went to protest. The business of the latter for the time was ruinous, and both were engulfed in the vortex of common disasters. Cozzens died about a week afterwards. " His death was caused by his failure. His physician said so." The unsecured creditors attacked the validity of the mortgage. The Circuit Court sustained it, and the controversy has been brought here for review.

Mr. Benjamin F. Tracy for the appellant.

Mr. George F. Comstock and Mr. William Allen Butler, contra.

Mr. Justice Swayne, after making the foregoing statement, delivered the opinion of the court.

The analysis of this case in the preceding statement divests it of all extraneous considerations, and presents it in the nakedness and simplicity of its material facts.

The central and controlling questions to be determined are:—

Whether the Oil Company had the power to give a mortgage for future advances; and,

Whether the mortgage here in question is, in the view of a court of equity, for the debt of the Oil Company or for the debt of Abraham M. Cozzens.

The oral arguments of the eminent counsel who appeared before us were addressed principally to these subjects. Numerous other points are made by the counsel for the appellant in his brief, and have been fully discussed in the printed arguments upon both sides. They are minor in their character, and we think involve no proposition that admits of doubt as to its proper solution. We are satisfied with the disposition made of them by the Circuit Court, and shall pass them by without further remark.

At the common law, every corporation had, as incident to its existence, the power to acquire, hold, and convey real estate, except so far as it was restrained by its charter or by act of Parliament. This comprehensive capacity included also personal effects of every kind.

The *jus disponendi* was without limit or qualification. It extended to mortgages given to secure the payment of debts. 1 Kyd, Corp. 69, 76, 78, 108; Angell & Ames, sect. 145; 2 Kent, Com. 282; *Reynolds* v. *Commissioners of Stark County*,

5 Ohio, 204; *White Water Valley Canal Co.* v. *Vallette*, 21 How. 414.

A mortgage for future advances was recognized as valid by the common law. *Gardner* v. *Graham*, 7 Vin. Abr. 22, pl. 3. See also *Brinkerhoff* v. *Marvin*, 5 Johns. (N. Y.) Ch. 320; *Lawrence* v. *Tucker*, 23 How. 14.

It is believed they are held valid throughout the United States, except where forbidden by the local law.

The statute under which the Oil Company came into existence made it " capable in law of purchasing, holding, and conveying any real and personal estate, whenever necessary to enable " it to carry on its business ; but it was forbidden to " mortgage the same, or give any lien thereon." This disability was removed by the later act of 1864, which expressly conferred the power before withheld. This change was remedial, and the clause which gave it is, therefore, to be construed liberally with reference to the ends in view.

The learned counsel for the appellant insisted that a mortgage could be competently given by the Oil Company only to secure a debt incurred in its business and already subsisting. This, we think, is too narrow a construction of the language of the law. A thing may be within a statute but not within its letter, or within the letter and yet not within the statute. The intent of the law-maker is the law. *The People* v. *Utica Insurance Co.*, 15 Johns. (N. Y.) 357; *United States* v. *Babbit*, 1 Black, 55.

The view of the court in *Thompson* v. *New York & Hudson River Railroad Co.* (3 Sandf. (N. Y.) Ch. 625) was sounder and better law. There the charter authorized the corporation to build a bridge. It found one already built that answered every purpose, and bought it. The purchase was held to be *intra vires* and valid. Here the object of the authorization is to enable the company to procure the means to carry on its business. Why should it be required to go into debt, and then borrow, if it could, instead of borrowing in advance, and shaping its affairs accordingly? No sensible reason to the contrary can be given. If it may borrow and give a mortgage for a debt antecedently or contemporaneously created, why may it not thus provide for future advances as it may need them? This

may be more economical and more beneficial than any other arrangement involving the security authorized to be given. In both these latter cases the ultimate result with respect to the security would be just the same as if the mortgage were given for a pre-existing debt in literal compliance with the statute. No one could be wronged or injured, while the corporation, whom it was the purpose of the law to aid, might be materially benefited. Is not such a departure within the meaning, if not the letter, of the statute? There would be no more danger of the abuse of the power conferred than if it were exercised in the manner insisted upon. The safeguard provided in the required assent of stockholders would apply with the same efficacy in all the cases. The object of the loan, the application of the money, and the restraints imposed by the charter in those particulars, would be the same, whether the transaction took one form or the other. According to our construction the company could give no mortgage but one growing out of their business, and intended to aid them in carrying it on. In legal effect the difference between the two constructions is one merely of mode and manner, and not of substance.

Such securities are not contrary to the law or public policy of the State. Many cases are found in her reported adjudications where both judgments and mortgages for future advances have been sustained.

Our view is not without support from the language of the statute, that " every mortgage so made shall be as valid to all intents and purposes as if executed by an individual owning such real estate." If this mortgage had been given by individuals, the question we are examining doubtless would not have been brought before us for consideration.

When a deed is fatally defective for the want of a sufficient consideration to support it, such a consideration subsequently arising may cure the defect and give the instrument validity. *Sumner v. Hicks*, 2 Black, 532. It is not necessary to go through the form of executing a second deed to take the place of the first one. This principle applies to the mortgage after all the advances had been made, conceding that it had before been invalid for the reason insisted upon.

The statute of 1864 neither expressly forbids nor declares void mortgages for future advances.

If the one here in question be *ultra vires*, no one can take advantage of the defect of power involved but the State. As to all other parties, it must be held valid, and may be enforced accordingly. *Silver Lake Bank* v. *North*, 4 Johns. (N. Y.) Ch. 370; *National Bank* v. *Matthews*, 98 U. S. 621. In the latter case this subject was fully examined.

A corporation can act only by its agents. If there were any such technical defect as is claimed touching the execution of this mortgage, it has been cured by acquiescence and ratification by the mortgagor.

No one else can raise the question. All other parties are concluded. *Gordon* v. *Preston*, 1 Watts (Pa.), 385.

Where money had been obtained by a corporation upon its securities which were irregular and *ultra vires*, but the money was applied for the benefit of the company, with the knowledge and acquiescence of the shareholders, the company and the shareholders were estopped from denying the liability of the company to repay it. And the same result follows where such securities are issued with the knowledge of the shareholders, so far as the money thus raised is applied for the benefit of the company. *In re Cork & Youghal Railway Co.*, Law Rep. 4 Ch. 748.

A court of equity abhors forfeitures, and will not lend its aid to enforce them. *Marshall* v. *Vicksburg*, 15 Wall. 146. Nor will it give its aid in the assertion of a mere legal right contrary to the clear equity and justice of the case. *Lewis* v. *Lyons*, 13 Ill. 117.

The second point to be considered is whether the mortgage was for the debt of Cozzens or for the debt of the Oil Company.

Cozzens occupied a twofold relation to the latter. He owned all the stock but a trifle, and was the president of the company. At the same time he was largely its creditor. When he applied to the Guaranty Company, he appeared in his official character, and proposed a present loan to the Oil Company of $50,000 upon its note, and further advances thereafter to the amount of $50,000, making in the aggregate the sum of $100,000, the whole to be secured by a mortgage from the company upon all its real estate.

This offer was accepted. The proposition as to the mortgage was in writing, and signed by Cozzens as president. It men-

tioned a loan of $50,000 as already made to the Oil Company, and spoke of " any future loan you may make to our company," as the liabilities to be secured.

Let us pause for a moment and consider the position of the parties at this point of time. So far, all that had been done and all that had been proposed and agreed to be done was in form and substance solely for the Oil Company. Nothing had been done or proposed for Cozzens individually. There is no ground for the allegation or suspicion that the transaction was in aught otherwise than as we have stated it. It is true the Guaranty Company held the indorsement, not of Cozzens, but of Cozzens & Co. on the note of the Oil Company for $50,000. But the Oil Company was primarily liable. Cozzens & Co. were responsible as indorsers and sureties, and were liable to be called upon only in the event of the default of the principal debtor. Until that occurred, they could not be required to respond; and in that contingency they would have been liable as any other sureties are under the same circumstances. The Oil Company was the principal debtor.

When the agreement between the Oil Company and the Guaranty Company came to be carried out, the scrivener by whom the papers were prepared without the request or knowledge of the Guaranty Company, described in the mortgage the penal bond of Cozzens as the thing to be secured, but the mortgage recited that the president had been authorized to make the loan and to execute the mortgage to secure its payment, and that the requisite consent of the stockholders had been given, and the condition of the mortgage was that the Oil Company, and not Cozzens, should pay whatever might become due upon the bond. It is true that Cozzens covenanted personally in the mortgage to pay, while there was no such covenant on the part of the company.

The first indorsement upon the bond was made upon the renewal of the company's note of $50,000, held by the Guaranty Company. One of those of $25,000 was for that amount advanced upon the note of the Oil Company for the like sum. The remaining indorsement was for that amount advanced upon a warehouse receipt for oil given by the company to Cozzens and by him transferred to the Guaranty Company.

All the moneys thus advanced were applied exclusively for the benefit of the Oil Company.

There can be no question as to the first indorsement on the bond of $50,000 being the debt of the mortgagor. It was the same debt which subsisted when the first note was delivered to the Guaranty Company, and the character of the debt was not changed by the renewal of the note and the indorsement on the bond then made.

If a note secured by a mortgage be renewed or otherwise changed, the lien of the mortgage continues until the debt is paid. Changes in the form of the instrument are immaterial. Equity regards only the substance of things, and deals with human affairs upon that principle. The same state of things in effect occurred with respect to each of the other sums advanced by the Guaranty Company. The note and warehouse receipt given for them were the note and receipt of the Oil Company, and it was responsible accordingly. Its needs were the motive, and were at the foundation of every loan that was made; and whether Cozzens acted as its agent in making them, or transferred the securities as a creditor acting for himself, is quite immaterial. The result is inevitably the same. In either case the Oil Company became directly liable upon the securities, and to that amount, the principal debtor to the mortgagee.

The condition of the mortgage being that the company should pay and not that Cozzens should, it could not be broken without the company's default. Until that occurred, there could be no remedy upon it either by foreclosure or ejectment. If Cozzens made default, no such consequence would follow. He could be sued on his covenant, but the rights and remedies of the mortgagee with respect to the mortgaged premises would be neither more nor less on that account. The covenant of Cozzens was collateral to the liability of the company. No such covenant was needed from the Oil Company, because the mortgage pledged its entire real estate, and the mortgagee held in addition a direct liability for each advance upon which a judgment at law could be taken. As before remarked, there could be no breach of the condition of the mortgage without the default of the Oil Company; and if it

had paid the amount due that would have extinguished the collateral liability of Cozzens and of Cozzens & Co., and if the tender had been refused, it would have extinguished the mortgage, though not the debt. *Kortright* v. *Cady*, 21 N. Y. 343.

In all that Cozzens did he acted as the agent of the Oil Company, and it would involve an utter perversion of the facts to hold that he and not that company was the principal debtor to the Guaranty Company.

We are satisfied beyond a doubt that it was the debt of the Oil Company and not his debt that was intended to be secured and was secured by the mortgage.

In examining this point, it was proper to consider all the evidence in the record. This was objected to by the counsel for the appellant. He insisted that the scope of our view must be limited to the face of the mortgage and the obligation secured by it.

It is common learning in the law that parol evidence is admissible to show that a deed absolute on its face is a mortgage, to establish a resulting trust, to show that a written contract was without consideration, that it was void for fraud, illegality, or the disability of a party, that it was modified as to the time, place, or manner of performance or otherwise, or that it was mutually agreed to be abandoned; also to show the situation of the parties and the surrounding circumstances when it was entered into and to apply it to its subject, to show that a joint obligor or maker of a note was a surety, and that the acceptor or indorser of a bill or the maker or indorser of a note became such for the accommodation of the plaintiff. Where a party has entered into a written contract, it may be so shown that he did it as the agent of another, though the agency was concealed and the principal not disclosed, and the principal, in such case, may be held liable upon it. A mortgage or a judgment may be assigned by parol.

These are but a small part of the functions which such evidence is permitted to perform.

In no class of cases is it admitted with greater latitude and effect than in that to which the one here in hand belongs.

In *Shirras* v. *Caig & Mitchell* (7 Cranch, 34), Mr. Chief Jus-

tice Marshall said: " It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of £30,000 sterling, due to all the mortgagees. It was really intended to secure different sums, due at the time to particular mortgagees, advances afterwards to be made and liabilities to be incurred to an uncertain amount."

After remarking that such an instrument was liable to suspicion, he proceeds: —

" But if, on investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been in fact injured by the misrepresentation. That cannot have happened in the present case."

The decree of the court was that the mortgagees were entitled to have the mortgaged premises sold, " and to apply the proceeds of said sale to the payment of what remains unsatisfied of their respective debts," &c.

In *Gordon* v. *Preston (supra)*, it appeared that the mortgage was for a greater amount than was owing to the mortgagee. Chief Justice Gibson said the mortgage was good " for the sum actually due." He said further: " But the mortgage was in fact given for the benefit of other creditors, whose debts are not disputed, and though the trust is not expressed in the instrument, *evidence was proper to explain the true nature of the transaction and negative any imputation of actual fraud."*

In *Hurd et al.* v. *Robinson et al.* (11 Ohio St. 232), the condition of the mortgage was: " Provided always, and these presents are upon the condition, that whereas the said Robinson is indebted to said bank for money loaned, and for divers bills of exchange and promissory notes, now if the said Robinson shall discharge his said several liabilities in six months from this date, these presents shall be void, otherwise, to remain in full force and virtue." The condition was held to be sufficiently definite, and the mortgage was sustained. The opinion of the court is able and elaborate. *Gill* v. *Pinney* (12 id. 38) is to the same effect.

Other like cases might be multiplied to an indefinite extent. It is unnecessary to incumber this opinion with further references. The grounds upon which they proceed are, that a thing is to be regarded as certain which can be made certain; that evidence can be adduced to apply the contract to its subject; that where there is enough to put those concerned upon inquiry, the means of knowledge and knowledge itself are, in legal effect, the same thing.

A *multo fortiori* was it proper to receive the evidence referred to in the present case.

See, in this connection, also, *Chester and Others* v. *The Bank of Kingston*, 16 N. Y. 336, and *Horn* v. *Keteltas*, 46 id. 605.

*Decree affirmed.*