Okey, C. J.
Tbe Nes Silicon Steel Company erected a rolling mill at Sandusky, and subsequently failed, and- tbe question presented is as to tbe priority among its creditors.
*421 On December 10, 1875, Klotz & Kromer filed in tbe court of common pleas of Erie county, a jietition to enforce a mechanic’s lien on property in that county belonging to the Steel Company. Among the defendants in the action, beside the Steel Company, was William T. W est (plaintiff in error), who claimed as successor of Lester S. Hubbard, under a mortgage on the same property executed by the Steel Company to Hubbard as trustee for its bond holders. Answers, cross-petitions and replies were filed, and after a decision of the cause in the court of common pleas, it was appealed to the district court, where it was held that the lien of Klotz & Kromer, as mechanics, was superior to that of West as such trustee under the mortgage, and the court ordered that the property should be sold to satisfy the liens thereon; and thereupon, on leave of this court, this petition in error was filed by West to reverse the judgment of the district court.
All the evidence is set forth in the record, and there is no material conflict therein. Klotz & Kromer furnished to the Steel Company a large quantity of material to be used, and which was used by the Steel Company in the erection of a rolling mill on the premises above referred to, at Sandusky city. This was done under a written proposition of Klotz & Kromer, assented to in writing by the Steel Company, on December 24, 1872, though the proposition embraced materials already furnished as well as materials to be thereafter furnished. The acceptance was in these words: “The Nes Silicon Steel Company hereby accepts the above proposition and agrees to pay as follows: eighty five per cent, to be paid on delivery of work once in each month, and balance to be paid on the completion of the rail milland the acceptance was signed by the president of the Steel Company. The first material was furnished on the 10th of November, 1872, and the last on March 14, 1874. The materials were furnished continuously, so that the whole constituted one account, which account amounted to $76,531.42. The first payment was made on the account on December 19, 1872, and the last on December 31, 1873, the payments in the aggregate amounting to $57,769.83, and leaving a balance due Klotz & Kromer of *422 $18,761.59. On March 20, 1874, they asserted, in the form prescribed by statute, a mechanic’s lien for their claim, and subsequently brought suit and recovered judgment thereon in the court of common pleas of Erie county. No doubt their lien for such balance is entirely valid and should date from November 10,1872; but the question is whether such lien is superior to the lien of the mortgage.
Previous to August, 1872, the Nes Silicon Steel Company was incorporated under the laws of the state of New York, and engaged in the business of manufacturing steel at Rome, in that state. On August 7, 1872, that company made a proposition to the citizens of Sandusky city, with a view to the erection of a rolling mill at that place. The proposition, signed by the president of the company, was as follows : “ The Nes Silicon Steel Company, of Rome, N. Y., proposes to the citizens of Sandusky, Ohio, as follows: If the citizens of Sandusky will donate five acres of land to the Nes Silicon Steel Company in some suitable location for a rolling mill in said city, and loan on bond and other security hereafter named, and on the conditions hereafter named, one hundred and fifty thousand dollars in cash, the Nes Silicon Steel Company will erect on said five acres of land, in a good and workmanlike manner, and of good and suitable material, a rolling mill for rolling railroad rails, of a capacity of at least fifty to sixty tons per day of twenty-four hours, and puddling furnaces sufficient for re-rolling; to commence and prosecute the same vigorously, as soon as notified by the-citizens of Sandusky that this proposition is accepted, to an early completion of the same, to be done within one year from said notice, and when completed, to stock and run and operate the same for five years, at least, after its completion, destruction by the elements excepted. This proposition is as follows : The Nes Silicon Steel Company proposes, as soon as the aforesaid land is deeded to it, to execute a mortgage on the same, to a trustee appointed by both parties, for one hundred and fifty thousand dollars, to secure the payment of bonds for one hundred and fifty thousand dollars, and to issue bonds to the same amount, payable in five years, bearing ten per cent, annual interest, payable semi-an *423 nually, and to place the same in the hands of said trustee, agreed upon by both parties. Coupons for said interest to be attached to said bonds. Interest shall only be paid on said bonds from the time the moneys are actually received by said company, to be adjusted by the trustee before delivering the bonds. Said bonds' are to be guaranteed by Elisha P. Wheeler, Charles H. Horton, Coe Robertson, William Evans, W. L. Graham, David Robertson, J. C. Robertson, E. Gulick, and as many other persons as the above named may choose to do so. The duties of said trustee are to hold the bonds in trust for the parties hereto, and to receive the money from the citizens of Sandusky for said bonds at par, and to dispose of said bonds and money as follows: When said company shall' present to him bills or accounts for materials, work or machinery, used in erecting said rolling mills and puddling furnaces, eighty-five per cent, of the amount of said bills or accounts shall be advanced to said company, lie receiving its receipt therefor, and describing the bill or account; and when said mill and'furnaces are completed, the fifteen per cent, remaining shall be paid on the same, not exceeding the amount of said bonds, and when the amount of said bonds has been paid to said company, said trustee shall deliver said bonds to the parties subscribing for the same, to the amount each has so subscribed. In case of the failure of the Nes Silicon Steel Company to pay said bonds or the coupons attached thereto, then, at the request of any bondholder then unpaid, said trustee shall proceed to collect said bond or coupon from the company, or guarantors of said bond, and pay tbe avails to the holder of said bond. Said Nes Silicon Steel Company is to get and keep its works insured against loss or damage by fire, and the policies assigned or payable to said trustee, for the benefit of the bondholders. Any bondholder is to have the privilege, at any time within one year after the completion of said mill, to take the stock of said company at par in place or lieu of the amount of bonds he may hold, by delivery of such bond or bonds.”
On August 16, 1872, a largo number of the citizens of San-dusky assented to the proposition. Several of them agreed to advance to the Steel Company certain sums of money, and re *424 ceivo therefor bonds so secured. Among the citizens who had interested themselves in this matter was William H. Mills, one of the defendants in error, who owned lands adjoining San-dusky. In consideration that he was not to be called upon to loan to the company any money, he agreed to and did convey to the company ten acres of his land, on which the rolling mill was to be and was erected, its value then being, it is said, $10,000. And among the subscribers to such loan were Klotz & Kromer, plaintiffs below, who, on October 16, 1872, agreed to lend to the company $5,000, and receive from the company bonds therefor, so secured. They were subsequently released, however, as to one-half of the amount, but performed the agreement as to the other moiety. And it was agreed by ail persons interested that Lester S. Hubbard should be trustee for the bondholders under such mortgage.
On October 28, 1872, the following instrument was signed by stockholders of the Steel Company, owning more than two-thirds of the stock of the company, they being the persons mentioned as guarantors in the proposition already set forth :
“ The Nes Silicon Steel Company, an incorporation duly organized under the laws of the state of New York, located at Rome, Oneida county, New York, having negotiated with Lester S. Hubbard, of the city of Sandusky, Ohio, and others, for a loan of one hundred and fifty thousand dollars, to be secured by the bonds of said company, issued at Rome aforesaid, payable to the said Lester S. Hubbard or bearer, on the first day of January, 1878, with interest at 'the rate of ten per centum per annum, payable semi-annually, for which interest coupons are to be attached to said bonds, the payment of which bonds are to be secured by a mortgage of ten acres of real estate of said company, situated in Sandusky aforesaid, to said Lester S.' Hubbard, as trustee for the holders of said bonds, and which loan was agreed to be made upon condition that the undersigned should personally guarantee, in writing, the payment of said bonds, both principal and interest, and should deposit with said trustee such guaranty for the benefit of said bondholders: Now therefore, in consideration of’the premises and of one dollar to the undersigned and each of us, *425 paid by said Lester S. Hubbard and said bondholders and each of them, and for the purpose of carrying into effect the agreement for said loan, and the condition upon which the same was to be made, we, the undersigned, hereby covenant and agree to and with said Lester S. Hubbard and said bondholders to and do hereby guarantee the payment of said loan, both principal and interest, and of said bonds and each of them, both principal and interest, and of the coupons and each of them attached to said bonds and each of them.”
That instrument was, in October or November, 1872, delivered by the Steel Company to Hubbard, the trustee, who in June, 1874, caused it to be recorded in the office of the recorder of Erie county and filed in the office of the clerk of the court of common pleas of that county.
On October 28, 1872, the Steel Company, by its president, executed, acknowledged, and delivered, in due form, to Hubbard, as such trustee, and to his heirs and successors, a mortgage on the premises, “ with the buildings, engines, machinery, fixtures and appurtenances,” which mortgage contained the following provision : “-Provided always, and these presents are on this express condition, that if the said Nes Silicon Steel Company, the party of the first part, shall well and truly pay or cause to be paid to the party of the second part, as such trustee, his certain attorney, heirs, executors, administrators, successor or assigns, the sum of one hundred and fifty thousand dollars and interest at the rate of ten per cent, per annum, by paying the bonds given by the party of the first part therefor1, and which this mortgage is given to secure, viz.: seventy-five bonds bearing even date herewith, made by the Nes Silicon Steel Company for the payment to L. S. Hubbard, trustee, or bearer, of $1,000 each, on the first day of January, 1878, with interest coupons attached for the payment of the interest semi-annually, and one hundred and fifty bonds of the same date, made by the said Nes Silicon Steel Company for the payment to L. S. Hubbard, trustee, or bearer, of $500 each, on the first day of January, 1878, with coupons attached for the payment of interest at the rate aforesaid, payable semiannually to the said party of the second part, which said sums *426 the said Nes Silicon Steel Company hereby covenants and agrees to pay, then these presents shall cease and be void. And in case default shall be made in the payment of the principal sum hereby intended to be secured, or in the payment of the interest thereof, or any part of such principal or interest, as above provided, then the said party of the second part, his successor, executors, administrators, or assigns, are hereby authorized, pursuant to statute, to sell the premises above granted, or so much thereof as will be necessary to satisfy the amount then due, with costs and expenses allowed by law, rendering the overplus, if any there may be, to the said parly of the first part.”
The mortgage was deposited by Hubbard in the office of the recorder of Erie county, where it was recorded on November 7, 1872.
Clothed with this authority, Hubbard, the trustee, under direction of the Steel Company, proceeded to dispose of the bonds from day to day. Before November 10, 1872, he had received from the proceeds thereof for the Steel Company $8,000 ; before November 19, 1872, he had received $21,000; and on August 6, 1873, he received for the Steel Company the proceeds of the last bond, and had thus received the full sum of $150,000.
On December 19, 1872, it was agreed between Klotz & Kromer, the Steel Company and Hubbard, the trustee, that Klotz & Kromer should present their bills to the company once a month, and that upon approval of the bills by its superintendent, they should be presented to Hubbard for payment out of the money received by him for the bonds. This arrangement, though not incorporated in terms in the writings between the parties, was carried out to this extent, that payments were made by Hubbard to Klotz & Kromer in December, 1872, and each of the months of the year 1873, except January, the payments, as already stated, amounting to $57,769.83, and leaving a balance of $18,761.59. The payment made August 22, 1873, was in full of the amount due Klotz & Kromer, including the fifteen per cent., down to July 23, 1873. Of the amount so received by them, the sum of *427 $16,888, was paid after the whole sum of $150,000 had come to the hands of Hubbard. Hubbard also paid money to divers other creditors of the Steel Company. He died before the commencement of this suit, having in his hands, it is said, no portion of the moneys so received, and William T. West (plaintiff in error) was appointed by the court, in this case, as his successor.
On behalf of Klotz & Kromer,' it was successfully claimed in the district court that the mortgage- was invalid as against the claims of the mechanics and the judgment creditors. ■ The court so held, it is said, on two grounds; first, that the mortgage was given to secure future advances, and that the mechanics’ lien attached before any considerable portion of the bonds had been purchased; and, secondly, that by the statute of New York, under which the Steel Company was incorporated, it is made a condition precedent to a valid execution of a mortgage by the company, that the owners of two-thirds of its capital stock should consent in writing that such mortgage might be made, and that such consent should be filed in the office where the mortgage is to be recorded, at the time or before such mortgage is presented for record.
With respect to the first objection, it is certainly true that this court has held, that where a mortgage is given to secure future advances, a subsequent mortgage will have priority over it as to any advances -made after such subsequent mortgage is placed on record. Spader v. Lawler, 17 Ohio, 371; Choteau v. Thompson, 2 Ohio St. 114; cf. Jones v. Guaranty & I. Co., 101 U. S. 622. We are not disposed to intimate any dissatisfaction with this rule, and, for a reason hereinafter stated, we need Dot express any opinion whether the rule applies to a mortgage of this character.
The other objection to the mortgage, that is, non-compliance with the statutes of New York, referred to in the record, has been discussed at length. Originally corporations of this character in New York were prohibited from mortgaging their property. Subsequently such power was given, and the amendatory act, in force when this mortgage was made, authorized the execution of a mortgage like this. Central Gold Mining Co. *428 v. Platt, 3 Daly, 263. But the latter act contains tho provision, “that the written assent of the stockholders, owning at least two-thirds of the capital stock of such corporation, shall first be filed in the office of the clerk of the county where the mortgaged property is • situated.” 2 Rev. Stats. N. Y. (6 ed.), 501. Sections 22 and 23, on the same page, relating to the filing of such consent, show, it is claimed, that the provision quoted applies as well to mortgages of lands situated beyond the limits of New York as to lands within that state. The statute of that state further provides that mortgages shall be recorded in the office of the county clerk.
The questions as to the construction of these statutory provisions, and their application to mortgages of real estate situated within this state, have been considered. No doubt, if the provisions apply to such mortgages of lands in this state, the recorder’s office is the proper place to deposit the consent, and perhaps recording it on the margin of the record of the mortgage, as in this case, may be a substantial compliance with the statute as to filing, leaving out of view in this statement the matter of time of filing and the form of the consent. So, we would probably have no difficulty in holding that such guaranty signed by stockholders of the company owning two-thirds of its capital stock, and thus recorded, was such substantial compliance with the statute as to the form of the instrument. Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328; Amerman v. Wiles, 24 N. J. Eq. 13. It is also urged that the statute of New York on this subject, however clear its words may be, can have no application to mortgages of lands situated in this "state. The same objection was urged and left undecided in Amerman v. Wiles, supra. Again, it is insisted that this mortgage is in the nature of a purchase-money mortgage, and that as to a mortgage of that character no such written consent is necessary; and, furthermore, that the statutory provisions requiring such written consent were enacted for the benefit and protection of the stockholders, who alone can take advantage of a noncompliance therewith. These views with respect to those statutory provisions are stated in the opinion of the court in Greenpoint Sugar Co. v. Whitin, supra, but the points were *429 not decided. Finally it is urged that in any view the mortgage became effectual, as of November 7,1872, the day it was filed for record, when the guaranty was recorded in the office of the recorder of Erie county.
We do not find it necessary to decide whether the objections to this mortgage might not, under other circumstances, be held as well taken. We are relieved from determining whether the principle declared in Spader v. Lawler, supra, applies to such a mortgage as this, or whether the New York statute, as to making and filing the written consent of stockholders, applies to such a mortgage, or has not been substantially complied with. Klotz & Kromer are, upon the plainest principles of equity, precluded by their acts and agreements with the Steel Company, from asserting such objections to the mortgage. Phillips on Mech. Liens, §§ 273, 495. They joined other citizens of Sandusky in accepting the proposition of the Steel Company to build the rolling mill; they subscribed and paid for bonds issued by the company and secured by the mortgage, and thereby induced others to do the same thing; they are beneficiaries under the mortgage; they received from the Steel Company, in payment of more than two-thirds of their claim, the sum of $57,000, which they knew had been advanced to the Steel Company on the faith that this was a valid mortgage ; they sold to others the larger portion of the bonds they received from the company, and it is fair to say that their purchasers relied on. the mortgage as a security. Under such circumstances, there can be no justice in saying that, because they were not fully paid, as they expected to be, out of the moneys so loaned to the Steel Company, they may, on discovering that the company and its guarantors have failed, assert a mechanic’s lien for the balance of their debt, and thereby defeat the mortgage, which everybody interested in it believed to be valid, until the whole turn of $150,000 had been advanced on the faith of it, and expended.
The judgment must be reversed, and the cause remanded for further proceedings. All the facts with respect to the mechanics’ lien asserted by Barney & Ferris'(defendants in error) are not before us, and hence we are unable to say whether the *430 remarks as to the claim of Klotz & Kromer apply to tlieir claim. We do not think they should be concluded on a further trial by their failure to offer proof on the trial in the district court.- As to the judgment of William H. Mills for $10,000, it is said that it is founded on a claim for the value of the land, but this does not appear. The claim upon which it was founded is, however, a matter of no importance in the case as now presented, for it is stated in his answer that the- judgment only “ became a lien on the premises in said petition described on the 19th day of October, 1874,” and hence, on the facts appearing in the record, his lien is inferior to that of the mortgage. And the views here expressed dispose of all questions as to other judgment liens asserted against the property.-
Judgment reversed. '