[No. 611.   October 12, 1895.]

# ABRAHAM D. COON, APPELLEE, v. BOSQUE BONITA LAND & CATTLE COMPANY ET AL., APPELLANTS.

MORTGAGES—ASSIGNMENT OF PART OF DEBT—FORECLOSURE—BILL BY MORTGAGEE FOR ACCOUNTING—ADVANCEMENTS FOR EXPENSES—DEFICIENCY JUDGMENT.—Where a holder of bonds, secured by deed of trust on certain property, transferred the bonds to one who foreclosed the deed and became the purchaser of the property at the sale for less than the amount due on the bonds,—on a bill for accounting, by the mortgagee, who had made advancements to the mortgagor for taxes, etc., and taken its notes for the same, complainant was not entitled to have such notes decreed a prior lien on the property, and the transferee also held personally liable on the notes.

ID.—ADVANCEMENTS—PROOF—FINDING.—But held: That the court did not err in sustaining the finding of the master that the amount of said notes was advanced by complainant in the payment of taxes and for the protection of the property from damage and loss, which was amply supported by the proofs.

ID.—ADVANCEMENTS—PRIOR LIEN—FINDING.—Nor did the court err in sustaining the finding of the master that it was provided by the deed of trust that, for all moneys so advanced by complainant to defendant, the same should become a first lien upon the mortgaged property and paramount to the bonds described in the deed, where it provided that in case of a sale and foreclosure, after the payment of the costs of sale, all other expenses of the trust including advancements for taxes and insurance, should be paid, then the principal and interest of the bonds.

ID.—BONDS SECURED BY DEED OF TRUST—PRIOR LIEN—NOTICE—ESTOPPEL.—The purchaser of bonds secured by deed of trust of record, securing also the payment of notes, is precluded from setting up want of notice that the notes, by the terms of the deed, are made a prior lien to the bonds.

APPEAL, from a decree for complainant, from the Second Judicial District Court, Bernalillo County. Modified and affirmed; COLLIER, J., dissenting.

The facts are stated in the opinion of the court.

WILLIAM B. CHILDERS for appellants.

JAMES G. FITCH for appellee.

LAUGHLIN, J.—On the twentieth day of October, 1885, the defendant company, the Bosque Bonita Land & Cattle Company, a corporation organized and existing under the laws of the territory of New Mexico, executed a deed of trust to Antonio y Abeytia, as trustee, to secure the payment of twenty coupon bonds, for $500 each, payable in ten years after date to the order of complainant, A. D. Coon, or order, at the Chatham National Bank, in the city and state of New York, with interest at one per cent per month from date until paid. The deed of trust contained the usual clause for sale and foreclosure on the default of payment of any of the interest due at any time, or in case of a breach of any of the covenants or agreements in the same by the said company, or any part of the principal. The trust deed, bonds, and coupons were properly executed, issued, and delivered to said Coon, who advanced the said company $10,000 thereon. The trust deed charged, in trust, to secure the loan, certain live stock and real estate, the property of the said company, situate in Socorro county. It also contained a provision that, in the event of the death or inability of the trustee named to act, the sheriff of Socorro county should then act as such trustee. The trust deed also contained a clause, after stating the conditions of sale, "and all other expenses of this trust, including all moneys advanced for insurance, taxes, or for any money paid by the party of the third part," meaning Coon as the party of the third part. At different times thereafter, Coon advanced to the general manager of the company, with the knowledge and consent of the other officers, various sums of money, for the company, in addition to the $10,000

loan, for the purpose of paying taxes, repairing an acequia for irrigating alfalfa growing upon a portion of the mortgaged premises, and to throw up an embankment to protect the farming lands from inundation by the Rio Grande, and took notes from the company for the same, in amount of $957.82 with interest. at one per cent per month from date until paid, which notes were signed by the said company, by Ira E. Leonard, president, and Charles O. Tiffany, secretary and treasurer, and approved by J. C. Tiffany, general manager, and were dated January 1 and April 10, 1886.   In the latter part of February, 1887, J. C. Tiffany paid Coon the $10,000 and interest to that date with his personal check on the Albuquerque National Bank; and Coon indorsed the bonds and coupons "without recourse," and delivered them to said Tiffany, and held the original deed of trust, and the two notes which were not paid.   Some time thereafter said Tiffany deposited all of the said bonds and coupons in the Albuquerque National Bank.   Afterwards said Tiffany became personally indebted to said bank, and gave his notes and said bonds as collateral, and afterwards, on September 18, 1888, said company gave its two notes, for $5,000 each, to said bank, in lieu of Tiffany's personal notes.   And the bank held the said bonds as collateral, and the bank made further advances, and took additional security; but when the company authorized the making of said two notes to said bank, and giving additional security, it expressly reserved in its resolution, from the effects of further incumbrances, the Bosque Bonita ranch, the real property here in controversy.   In December, 1889, the complainant, Coon, filed his bill in the district court against the Bosque Bonita Land & Cattle Company, the Albuquerque National Bank, and the trustee sheriff, for an accounting, and for a decree for payment to him of whatever might be found due by the said

defendant corporation, or the Albuquerque National Bank, and that the sum so found due him on said promissory notes be decreed a prior lien on the mortgaged property, over the said bonds and coupons, and for complainant's solicitor's fees, and in case of default in the payment. the property be sold and foreclosed; and for general relief. The Bosque Bonita Land & Cattle Company did not answer, or make any defense, but the Albuquerque National Bank answered the bill, and denied that the debt for which said two notes were given was, by virtue of the language in the defeasance clause in the mortgage deed,—"including all moneys advanced for insurance, taxes, or for any money paid by the party of the third part," sufficient to create a prior lien to that of said bonds, and was insufficient in law to bind the defendant bank, and denied that any power of sale existed by law in said mortgagee to sell and foreclose, except in default of payment of interest or principal, and then only at the instance of the holders of said bonds or coupons; and also denied that there was any agreement for future advance by said Coon to said company, other than the $10,000, at the time of the execution of the said mortgage, and that it was understood then that, for any further advance by Coon, additional security was to be given; denied that the debt on said notes was due and unpaid; averred that on February 19, 1891, said bank, as the holder of said bonds and coupons, sold and foreclosed said mortgaged property in accordance with the authority in said deed of trust contained, and became the purchaser of said mortgaged property, but denied that the property brought sufficient money to pay the sum of principal and interest due said bank on said bonds; with a general denial to all the material issues in the bill,—to which complainant filed a general replication, and the cause was referred by the court to a special master, to take proofs, and report his findings

of facts and conclusions of law thereon.  The special master took the proofs, and reported his findings in favor of complainant.  Defendant bank interposed objections and exceptions to the master's report, which were denied, and the report was confirmed, and a decree by the Fifth judicial district court was entered for the sum of $1,906.34 due complainant on said note, against the Bosque Bonita Land & Cattle Company and the Albuquerque National Bank, with an order for sale and foreclosure in default of payment by said company and said bank, and for a deficiency judgment in case the proceeds of sale did not satisfy the amount; and the property was sold and bid in by complainant. And from this decree and order defendant bank appealed, but did not give a supersedeas bond; and pending the appeal the venue was changed to the second district, and the report of the sale by the special master was there approved, and the case is here on appeal also from that court.

The appellant bank assigned a number of grounds as errors in the final decree and confirmation of the master's sale by the court below, and sufficient to raise all the issues material to a proper disposition of the case on its merits, and the first one which will be considered is:  "Second.  The court erred in finding by its decree that the Albuquerque National Bank was indebted to the complainant for and on account of the notes mentioned in the bill of complaint, and made by defendant the Bosque Bonita Land & Cattle Company."  The principal contention of the appellee is that the debt due on the notes is a prior lien on the mortgaged property to the debt due on the bonds now held by the bank, and it is not clear how this contention can be successfully maintained by appellee; that is, how the bank can be holden for the amount due on the notes, and at the same time make the debt due on the notes a prior lien on the

ASSIGNMENT of part of mortgage debt: foreclosure: bill for accounting: advancements: deficiency judgment.

property given as security to secure the payment of the sum due on the bonds held by the bank and the amount due on said notes, because (admitting for the present that the bank is the legal holder of the bonds, and that the debts due on the bonds and on the notes were both secured by the same mortgage, and on the same property) it is not plain how the bank is individually bound for the amount due on the notes. This error is well taken, and it is sustained as to the individual liabilities of the Albuquerque National Bank.

The next assignment is: "Third. The master, as well as the court, erred in finding that the sums of money mentioned in said notes were advanced by complainant in the payment of taxes, and in protecting the property mentioned in the deed of trust mentioned in the bill of complaint from loss, destruction, and damage." The trust deed provided for these advances, and the proof shows that they were made by complainant at the request of the general manager of the company, and for the purposes specified, and with the knowledge, consent, and approval of all the officers and board of directors of the company; and the proof is clear that money was expended by the general manager for the protection and preservation of the property then holden for the security of the debts of the company, and which resulted in the protection of appellant's security, and, too, at the very times that these advances were made; and, while it is not clearly shown that the same money so advanced was used for the purposes indicated, there is nothing to show that it was not the same money so advanced by appellee. The general manager, to whom the advances were made, and all the other officers of the company who could have had any personal knowledge of these transactions, were dead prior to the time of the hearing of this case, and it was impossible to show directly how

ADVANCEMENTS: proof: finding.

the money was expended. The master's finding on this point is amply sustained by the proofs and this assignment is not well taken. .

The fourth assignment is that "both the court and the master erred in finding that it was provided by said deed of trust that, for all moneys so advanced by complainant to the said defendant, the same should be and become a prior and first lien upon the said property, prior and paramount to the bonds described in the said deed of trust, and that complainant was entitled to such a lien upon said property for the sum of $1,906.34, or any other sum, against the appellant." The trust deed provided, in the defeasance clause, that in the event of a sale and foreclosure of the mortgaged property there should be paid, first, the costs and the expenses of the sale, "including the reasonable fee of the said party of the second part [the trustee], and all other expenses of this trust, including all moneys advanced for insurance, taxes, or for any money paid by party of the third part, including interest thereon at one per cent per month, then to pay the principal and interest of said bonds. * * *" It is established by the evidence that at the time the deed of trust was presented to Coon, for inspection and examination, by the officers of the Bosque Bonita Land & Cattle Company, and before it was signed and delivered to Coon, the question came up for discussion as to the future advances to the company by Coon for insurance and taxes, and that the officers of the company told Coon that the company would need money for other purposes, and that before the mortgage was executed the words, "or for any money paid by party of the third part," were written into the instrument, and became a material part of it. Appellant contends that the words so interlined were not sufficient to constitute the mortgage security for the advances made by appellee, but

*[Margin note: ADVANCEMENTS: prior lien: finding.]*

this position can not be supported, because it was the bona fide intention of all parties concerned that any future advances made by Coon should be secured by this mortgage, and, had that not been the intention, these words would never have been written into that instrument; and there is nothing in the mortgage that can, with any reasonable intendment, be construed to defeat it.

Appellant further contends that, even if the mortgage can be so construed as to make it a security for any future advances, it cannot be held to constitute such a prior and paramount lien to that of the bonds held by the bank. The proofs show that appellee advanced money at different times to the company, and took one note dated January 1, 1886, due one day after date, and the other note dated April 10, 1886, due thirty days after date, and that all these advances were made and the notes taken during the time he held the bonds, and about a year before he delivered them to Tiffany, and there is nothing to show that any default was made on the bonds. These notes were given for money advanced to pay the taxes and other current expenses,—for the protection of the mortgaged property, and to save it from loss and destruction,—and the trust deed especially provides that such expenses shall first be paid out of the proceeds of the sale. Both of these notes were due in the latter part of May, 1886, and default on the part of the company to pay them gave appellee a right of action against the company. But appellant further contends, that by the terms of the trust deed, there was no power for sale and foreclosure, except on default of interest on the bonds, or some part of the principal thereof. This is true, but the holder of a mortgage, or an equitable lien, may proceed in a court of chancery to have his lien established and declared, and an order of sale

*Margin note: BONDS secured by deed of trust: prior lien: notice: estoppel.*

and foreclosure, as in the case at bar. This right of action on the notes existed long before any right to foreclose under the bonds. It would hardly be contended that the appellee would be required to advance money for the payment of taxes, insurance, and for the protection of the property in other respects, and be compelled to wait ten years for the return of his money, because the mortgagor happened to keep his interest paid up; otherwise the mortgagee might be compelled to advance more money than the property was worth, or lose his principal, by reason of incumbrances on the property, or its loss or destruction. It is a well settled principle of law that the breach of any of the covenants will render the whole sum due, and this applies as well to future advances. Shirras et al. v. Craig et al., 7 Cranch, 35; Lawrence v. Tucker, 23 How. 14; Jones v. Guaranty & Indemnity Co., 101 U. S. 622. The deed of trust was a public record when the bonds were delivered by J. C. Tiffany to the appellant bank, and the clause for future advances in it was sufficient to put the bank on inquiry, and it is now estopped from setting up want of notice; and especially as the delivery of the bonds to the bank was not accompanied by the delivery of the original trust deed, and no explanation was given why it was not delivered with the bonds.

It is held here that the sum of $1,906.34 found to be due to the appellee, Abraham D. Coon, by the special master and the court below, constituted and is a prior and paramount lien, in favor of said appellee, to the amount due on said bonds and coupons, and that the final decree made and entered by the Fifth judicial district court be modified by striking out the decree and judgment for the indebtedness claimed, as against the appellant, the Albuquerque National Bank, and that the final decree, in all other respects, be, and the same is, affirmed, and that the decree approving the sale of the mortgaged property by the Second

judicial district court be, and the same is, affirmed, with an order to said court to require the said special master to execute and deliver the deed as therein required.

SMITH, C. J., and BANTZ, J., concur.

COLLIER, J. (dissenting).—I must dissent from the majority opinion and the judgment of the court in this case. I think the principle of limiting general words by the context in which they appear is overridden in that opinion, and that only "money paid by the party of the third part," as in some way incidental and subservient to the securing of the $10,000 debt and interest, was contemplated in the clause of the deed of trust upon which this cause turns. The fact that money which might be advanced under that clause would stand on the same footing as if advanced for insurance and taxes, and that it is a claim superior in dignity to the main debt, are reasons, of themselves, sufficient to forbid the idea that future advances, in the way of additional loans, were being provided for. If these general words are limited by the context, then it must be that the money must be "paid" in the way of providing for "expenses of the trust;" and, as advancing money for insurance and taxes is agreed by the parties to be among "the expenses of the trust, other things, like unto insurance and taxes or other such moneys, are meant, and no more. Money advanced for improvements on the property, such as constructing embankments to prevent overflow by the Rio Grande from an apprehended flood, or to provide irrigating ditches for raising crops, I respectfully insist, are not of the nature of either insurance or taxes. Even though the evidences may have tended to show that at the time the money was advanced to dike the Rio Grande a flood was imminent, and that the value of the security would have been

greatly impaired if such dike had not been constructed, yet, as such evidence does not show that at the time of the execution of the deed of trust, there was any such fear, nor show that such flood was anything unprecedented, or even very extraordinary, I do not think the expenditure for such a dike can be considered anything but a mere loan, not covered by the clause in question. If it were a question of advancing money to repair damages caused by the act of God, it might come under the principle of money advanced for insurance, but this I even doubt, as the clause in question could not, by any fair rule of construction, include expenditures for throwing up embankments to protect the land from the river, or for raising crops on the land, I think no money has been paid by the complainant which entitles him to proceed against the security for the obligation held by the bank. This view, also, would dispose of the question of notice to the bank. I think the decree in favor of complainant should have been set aside, and his bill dismissed.