NOYES ESTATE, RESPONDENT, *v.* GRANITE-ALASKA CO.,
APPELLANT.

(No. 4,458.)

(Submitted March 3, 1920.   Decided April 8, 1920.)

[189 Pac. 225.]

*Mortgages—Action to Compel Release—Intention of Parties—
Parol Evidence—Admissibility.*

1. In an action seeking the release of a mortgage, parol evidence
was admissible to show that in addition to the sum of money men-
tioned in it as being secured by it, it was intended to secure future
advances by the mortgagee to the mortgagor, as well as to secure de-
fendant company's president against personal liability on a promis-
sory note made to a third person for the benefit of the mortgagor.

*Appeal from District Court, Silver Bow County; Edwin M.
Lamb, Judge.*

ACTION by the Noyes Estate, a corporation, against the
Granite-Alaska Company.   From a judgment for plaintiff, the
defendant appeals.   Reversed.

*Mr. James E. Murray* and *Mr. J. F. Emigh,* for Appellant,
submitted a brief; *Mr. Murray* argued the cause orally.

*Mr. E. B. Howell,* for Respondent, submitted a brief, and
argued the cause orally.

MR. JUSTICE HURLY delivered the opinion of the court.

The complaint in this case alleges that on the twenty-seventh
day of June, 1917, the plaintiff, being indebted to defendant
[1]   Granite-Alaska Company, for the purpose of securing
said indebtedness executed and delivered to said defendant a
certain mortgage, and thereafter and on August 31, 1917, for
the purpose of further securing said indebtedness, delivered to
defendant Daly Bank & Trust Company of Butte an assign-
ment by which said bank was authorized and directed to pay

to said Granite-Alaska Company all moneys which might be paid into said bank by the Anaconda Copper Mining Company upon a certain option for the purchase of the interest of the plaintiff in certain properties. It is further alleged that the plaintiff has fully paid the indebtedness secured by said mortgage and assignment and fully performed all the conditions thereof; that it has demanded of the Granite-Alaska Company a release of said mortgage and a surrender of said assignment, but that the defendant Granite-Alaska Company for the space of more than seven days neglected and refused and still neglects and refuses to discharge or release the said mortgage or surrender the said assignment. For relief the plaintiff demands the sum of $100 statutory penalty for failure to release the mortgage; that the defendant Daly Bank & Trust Company be restrained from paying to defendant Granite-Alaska Company any sum or sums that may be paid into said bank upon said option; that the defendant Granite-Alaska Company be required to execute and acknowledge a release of said mortgage; and that said assignment be surrendered by the Daly Bank & Trust Company to the plaintiff, together with any sums of money which said bank may receive upon said option prior to the date of judgment. The defendant Daly Bank & Trust Company entered no appearance.

The answer of the defendant Granite-Alaska Company admits the delivery and execution of the mortgage to it and the delivery of the assignment to the Daly Bank & Trust Company as alleged in the complaint. The answer further denies generally each and every allegation in the complaint except as otherwise admitted. For a separate and affirmative defense, said defendant alleges the execution of the mortgage referred to in plaintiff's complaint; that said mortgage was given by plaintiff to secure the payment of a certain promissory note of the Noyes Estate to the Granite-Alaska Company, defendant herein, for the sum of $25,000 and interest thereon at the rate of eight per cent per annum from the twenty-seventh day of June, 1917, until paid, and, further, for the purpose of secur-

ing the defendant Granite-Alaska Company for any future advances which might be made by said defendant to the said plaintiff and to secure T. J. Murray, president of said defendant, for any obligations that might be incurred by him in connection with the management or financing of the said Noyes Estate, a corporation; that said mortgage, among other things, contained provisions as follows: "This mortgage is given as security for the following obligations:" There is then set forth a copy of the promissory note signed by plaintiff in favor of defendant Granite-Alaska Company for $25,000, above referred to, followed by clause reading: "(2) Future advances made by the mortgagee to the mortgagor not exceeding the sum of one hundred and fifty thousand dollars, with interest at eight per cent per annum."

It is further alleged that at the time of the execution of said mortgage plaintiff was indebted to the Penn Mutual Insurance Company of Philadelphia upon a certain promissory note in the sum of $150,000, and that the plaintiff was at said time failing to make the payments on said obligation as required by the terms thereof, and that at the time of the execution of the said mortgage T. J. Murray was the president and owner of all the capital stock of the Granite-Alaska Company except two shares thereof; that the plaintiff and its officers knew that said Murray was the president of said defendant corporation and the owner of such stock; and that the plaintiff and its officers knew that the said Murray, for the purpose of securing the aforesaid loan from the Penn Mutual Insurance Company, had extended his personal credit to said corporation by joining in the execution of the said promissory note to the said Penn Mutual Insurance Company and had become personally liable upon said obligation. It is further alleged that it was mutually understood and agreed by and between the plaintiff and this defendant and said Murray that the mortgage hereinbefore referred to was made and executed and should stand as security to said defendant and to said Murray for the payment of the obligation incurred in the execution of the aforesaid note, and that

57 Mont.—33

the said mortgage should be and remain in full force and effect until the said note to the Penn Mutual Insurance Company should be fully paid. It is further alleged that by reason of a mistake in drawing the mortgage the same does not clearly express the true consideration and purpose of said mortgage. It is further alleged that said note to Penn Mutual Insurance Company has never been paid, and that by reason of these facts the obligation of the plaintiff under the said mortgage has not been fully performed, and that said mortgage is still in full force and effect, and that the defendant is entitled to hold said mortgage to secure the said T. J. Murray. The defendant further alleges that it has no interest in the controversy existing between the plaintiff and the said Murray except as above set forth, and is willing and now offers to cancel and release said mortgage whenever the plaintiff shall fully pay and discharge its liability to the Penn Mutual Insurance Company on said note.

To the answer of the defendant Granite-Alaska Company the plaintiff demurred upon the ground that the same fails to state facts sufficient to constitute a defense or counterclaim. The demurrer was sustained, and the defendant Granite-Alaska Company failed to further plead. Judgment was thereupon entered in favor of the plaintiff in accordance with the prayer of the complaint. From that judgment this appeal was taken.

The only real point in controversy is whether the answer of the Granite-Alaska Company sets forth sufficient facts to permit of proof that the real consideration for the mortgage was as alleged therein.

In *Hall* v. *Tay,* 131 Mass. 192, it appeared that Tay and wife executed a mortgage upon lands belonging to the wife to Hall, who was a member of a firm engaged in selling coal, for the purpose of obtaining coal from Hall's firm. Thereupon the firm of which Hall was a member sold to Tay three cargoes of coal. He failed to pay for the same, and in an action instituted by Hall upon the mortgage it was contended that, the mortgage being to Hall individually, he could not show by

parol that the debt secured was in fact to the firm and that it was the purpose to secure future sales or advances. The court said: ''When a mortgage on its face is for the payment of a specific sum of money, it may be shown that its purpose was security for future advances which might be made from time to time. (*McKinster* v. *Babcock*, 26 N. Y. 378, 381.) In *Shirras* v. *Caig*, 7 Cranch, 34, 3 L. Ed. 260 [see, also, Rose's U. S. Notes], it was held that a deed purporting to secure the repayment of £30,000 may stand as security for the repayment of part of that sum, and for the indemnity of the mortgagee from liabilities, if there be no fraudulent intent. It was said by Chief Justice Marshall, in delivering the judgment: 'It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of £30,000 sterling due to all the mortgagees. It was really intended to secure different sums, due at the time from particular mortgagees, advances afterward to be made, and liabilities to be incurred to an uncertain amount. It is not to be denied that a deed, which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is, certainly, always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed, of his real equitable rights, unless it be in favor of a person who has been, in fact, injured and deceived by the misrepresentation.'

''We can see no reason why, in the absence of any specific statement in the mortgage as to the character of the advances, parol evidence may not be introduced to identify and prove what advances were in fact intended by the parties. It is competent for the purpose of showing the actual consideration. There certainly would be no objection to it if the mortgage had been made in the same terms to the firm by name. And if made to one of the firm for the benefit of the firm, and, in con-

sequence thereof, the advances were made by the firm, evidence of the actual advances made by the firm would be competent. Such evidence has no tendency to vary or control the written instrument, but merely to show what the particular advances were, intended to be secured under the general terms of the mortgage. And it is no objection to the evidence that it necessarily proves that Hall therefore took the deed, not in his individual capacity, but as acting for and in behalf of his firm. If the evidence shows that the advances referred to in the mortgage were advances by the firm, and that it was so understood by the parties, and it was intended that the mortgage should stand as security for such advances, then Hall would hold as trustee for the firm under a resulting trust, the firm having made actual advances which the mortgage was given to secure. Evidence to establish such facts would be competent. (*Jackson* v. *Stevens*, 108 Mass. 94; *Pond* v. *Eddy*, 113 Mass. 149; *Jones* v. *Guaranty & Indemnity Co.*, 101 U. S. 622, 25 L. Ed. 1030 [see, also, Rose's U. S. Notes].)''

In *Johnson* v. *Bratton*, 112 Mich. 319, 70 N. W. 1021, the court said: ''The general rule is that you cannot import into a written agreement a parol agreement which alters the terms or legal effect of the written agreement. * * * An exception to this rule, however, is made in relation to mortgages (17 Am. & Eng. Ency. Law, 454), and parol evidence is admissible to identify the future advances intended to be secured by a mortgage. Though the mortgage, on its face, is for the payment of a specific sum of money, parol evidence is admissible to show that it was really intended to secure future advances made from time to time. * * * We think it was not error to allow parol proof of what the facts were about the giving of the mortgage, what debt it was to secure, and for whose benefit it was made.''

In the foregoing case the mortgage was on its face in favor of an individual to secure a promissory note for $1,500, whereas the intent of the parties was that the mortgage should be security to a firm, of which the person named as mortgagee

was a member, to secure, not only an existing indebtedness, but also future advances to be made by such firm by the sale of goods to the mortgagor.

As illustrative of the foregoing doctrine, see the following authorities: Jones on Mortgages, 7th ed., secs. 170, 367a, 846; *Price* v. *Brown,* 98 N. Y. 388; *Lawrenceville Cement Co.* v. *Parker,* 60 Hun, 586, 15 N. Y. Supp. 577; *Banta* v. *Wise,* 135 Cal. 277, 67 Pac. 129; *Anglo-Californian Bank* v. *Cerf,* 147 Cal. 384, 81 Pac. 1077; *Wilkerson* v. *Tillman,* 66 Ala. 532.

We are of opinion that, if the facts are as pleaded by the Granite-Alaska Company, the defendant for its own protection had the right to refuse to satisfy the mortgage until Murray had been released from the indebtedness to the Penn Mutual Insurance Company, and that the answer sufficiently pleaded the defense in that regard; also, it would be competent for the defendant upon a trial to introduce parol testimony to establish the allegations of the answer, if such testimony exists.

The judgment is reversed.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOL-LOWAY, MATTHEWS and COOPER concur.